**In the Interest of: A.H., Plaintiff,**

**Juvenile Officer, Respondent,**

v.

**R.H., Appellant,**

**B.K., Defendant.**

**No. WD 57073.**

Missouri Court of Appeals, Western District.

Jan. 11, 2000.

Johanna Faith Telke, Kansas City, for appellant.

Mary Kathryn O'Malley, Kansas City, Dale Nathan Godfrey, Blue Springs, for respondent Juvenile Officer.

Kyla Jean Grove, Kansas City, for respondent A.H.

Before BRECKENRIDGE, C.J., P.J., ULRICH, and EDWIN H. SMITH, JJ.

ROBERT G. ULRICH, Judge.

R.H. (Mother) appeals the judgment of the trial court terminating her parental rights in her minor daughter, A.H. She contends that the trial court's determinations that the child was abused or neglect-

ed, section 211.447.4(2) [1], that Mother was unfit to be a party to the parent and child relationship, section 211.447.4(6), and that termination of her parental rights was in the best interest of the child were against the weight of the evidence. The judgment of the trial court is affirmed.

Approximately two years prior to the judgment terminating Mother's parental rights in A.H. in this case, Mother's parental rights in another daughter, B.H., were terminated. On May 1, 1997, judgment was entered in the Circuit Court of Clay County terminating the parental rights of Mother in B.H., born August 8, 1994. The termination of Mother's parental rights in B.H. was based on two statutory grounds: (1) that the child had been adjudicated to have been neglected, section 211.447.2(2), RSMo 1994; and (2) that the child had been under the jurisdiction of the juvenile court for a period of one year, and conditions which led to the assumption of jurisdiction still persist, section 211.447.2(3), RSMo 1994. Specifically, the court found (1) that since August 24, 1994, Mother has failed to provide B.H. with proper care and supervision; (2) that since August 24, 1994, social services agencies and programs in Clay County, Missouri, and Wyandotte County, Kansas, have offered to Mother extensive assistance, education and support, but Mother has been resistive and uncooperative to the offered services and, in fact, threatened to flee with the child to avoid services; (3) that on September 23, 1994, Mother moved from a transitional living program and placed the child in the care of a man who has an extensive and unfavorable history with the Missouri Division of Family Services (DFS) and juvenile authorities; (4) that since jurisdiction was taken over the child, the Clay County DFS has made diligent efforts to aid Mother to adjust her circumstances and conduct to provide a proper home for the child, but Mother has been unwilling or unable to sufficiently comply with the terms of the plan so as to provide the child with a safe, stable home; and (5) that it is unlikely that additional services would bring about lasting parental adjustment to enable return of the child to Mother within an ascertainable period of time.

During the same time, Mother gave birth to another child, M.H., a son. Due to Mother's homelessness, the Circuit Court of Clay County, assumed jurisdiction of M.H., and placed the child in the custody of his father.

A.H., the child at issue in this case, was born to Mother on April 23, 1998. The day after her birth, A.H. was removed from Mother's custody and placed in the care and custody of the DFS. A.H. entered the jurisdiction of the family court on July 14, 1998, pursuant to the filing by the juvenile officer of a second amended petition. The petition alleged that A.H. was without proper care, custody, and support in that Mother's housing situation was unstable. The petition further alleged that due to Mother's homelessness, Mother had lost custody of A.H.'s half-brother, M.H., and her parental rights in A.H.'s half-sister, B.H., had been terminated.

A petition for termination of parental rights in A.H. was filed by the juvenile officer on August 5, 1998, seeking to terminate the parental rights of B.K., A.H.'s father, and Mother. Following a hearing on the petition, the trial court entered its judgment terminating the parental rights of B.K.[2] and Mother in A.H. on February 16, 1999. It found that A.H. had been abused or neglected pursuant to section 211.447.4(2) in that Mother failed to provide for the child's physical, mental, and emotional needs by not providing necessities, financial or otherwise, to support the child. The trial court also found that Mother was an unfit parent as defined by section 211.447.4(6) in that since the child's birth, Mother had not had stable housing and Mother's parental rights in B.K. had

---

1. All statutory references are to RSMo Cum. Supp.1998 unless otherwise indicated.

2. B.K. does not appeal the judgment terminating his parental rights in A.H.

been terminated within the past three years. This appeal by Mother followed.

[1, 2] A trial court's decision to terminate parental rights will be affirmed on appeal unless the record contains no substantial evidence to support the decision, the decision is against the weight of the evidence, or the trial court erroneously declares or applies the law. *In Interest of R.K.*, 982 S.W.2d 803, 805 (Mo.App. W.D.1998). An appellate court will reverse the judgment of a trial court terminating the parental rights of a party only when it firmly believes that the judgment is wrong. *Id.* In reviewing a trial court's decision, an appellate court views the evidence and its reasonable inferences in a light most favorable to the decision. *Id.* An appellate court also defers to a trial court's ability to determine the witnesses' credibility and to choose between conflicting evidence. *Id.*

■ A trial court may terminate parental rights to a child where it finds that the termination is in the best interest of the child and where it appears by clear, cogent and convincing evidence that grounds exist for the termination as provided by sections 2, 3, or 4 of section 211.447. § 211.447.5. "Clear, cogent and convincing evidence in an action for termination of parental rights is evidence that instantly tilts the scales in favor of termination when weighed against the evidence in opposition and the finder of fact is left with the abiding conviction that the evidence is true." *R.K.*, 982 S.W.2d at 806 (quoting *In Interest of W.S.M.*, 845 S.W.2d 147, 150 (Mo.App. W.D.1993)).

In this case, the trial court terminated the parental rights of Mother in A.H. based on two statutory grounds, sections 211.447.4(2) and 211.447.4(6). Section 211.447.4(2) provides for termination of pa-

rental rights if the child has been abused or neglected. The statute provides in pertinent part:

4. The juvenile officer or the division may file a petition to terminate the parental rights of the child's parent when it appears that one or more of the following grounds for termination exist:

(2) The child has been abused or neglected. In determining whether to terminate parental rights pursuant to this subdivision, the court shall consider and make findings on the following conditions or acts of the parent:

(d) Repeated or continuous failure by the parent, although physically or financially able, to provide the child with adequate food, clothing, shelter, or education as defined by law, or other care and control necessary for the child's physical, mental, or emotional health and development.

§ 211.447.4(2).

■ Pursuant to section 211.447.4(2), the trial court found in its judgment that Mother "failed to provide for the child's physical, mental, and emotional needs by not providing necessities, financial or otherwise, to support the child." Mother argues on appeal, however, that the trial court's finding was against the weight of the evidence. Mother contends that the record showed that she could maintain a stable home for A.H. and that she provided financial support "as she was able."[3] Mother also argues that the evidence demonstrated that she had emotional ties with A.H. arising over regular visitation and that she exhibited strong interest and commitment to A.H.[4]

At the hearing on the petition for termination of parental rights in January 1999,

---

3. The extent of payment by the parent for the cost of care and maintenance of the child when financially able to do so is a factor to be evaluated by the trial court when considering whether to terminate parental rights under section 211.447.4(2). § 211.447.6(3).

4. The emotional ties to the birth parent, the extent to which the parent has maintained regular visitation, and the parent's disinterest in or lack of commitment to the child are all factors to be evaluated in considering whether to terminate parental rights pursuant to section 211.447.4(2). §§ 211.447.6(1), (2), and (5).

Mother testified that she had been at her current address for the last eight months. Other evidence in this case, however, showed that Mother was homeless when A.H. was born in April 1998. After A.H. was removed from Mother, Mother's housing situation remained extremely unstable. In June 1998, Mother lived with B.K., A.H.'s father. In August 1998, she lived with another man, L.H. The same month, Mother tested positive for marijuana use and was admitted to the North Star Program, a drug rehabilitation program. Mother missed several sessions at North Star and was, therefore, placed in its transitional living program in September 1998. Mother was discharged from this program due to noncompliance on September 21, 1998. The discharge from the substance abuse treatment program constituted a violation of Mother's probation,[5] and Mother was incarcerated. Mother remained incarcerated until December 1998.

▆▆▆ Furthermore, while evidence was offered that Mother sporadically brought toys and clothes to A.H., the record revealed that Mother provided no financial support to A.H. while she was in the custody of the DFS. During cross-examination, Mother was asked if she had paid any child support to the DFS for the support of A.H. She responded that she was not ordered to pay child support. Although the DFS did not demand that mother support her child, a parent's duty to support the parent's child does not abate while the child is in the custody of DFS. *In Interest of S.C.*, 914 S.W.2d 408, 412 (Mo.App. W.D.1996). During the eight-month period between A.H.'s birth and the hearing, Mother was unemployed. While evidence was presented that Mother was physically unable to work at the time of the hearing due to pregnancy, the record discloses no evidence that Mother was incapable of employment in 1998 apart from her substance abuse treatment and incarceration during

the latter part of 1998. In the absence of such evidence, Mother can be considered financially able to support her child. *S.C.*, 914 S.W.2d at 412–413; *R.L.P. v. R.M.W.*, 775 S.W.2d 167, 171 (Mo.App. E.D.1989).

Finally, evidence was introduced that Mother maintained fairly consistent visitation with A.H. throughout the time the child was in foster care and that a DFS social worker observed an emotional bond between Mother and the infant. The testimony of a clinical psychologist who conducted a psychological evaluation of Mother, however, asserted that any emotional bond would be insignificant under these circumstances. The following question and answer occurred during the psychologist's redirect testimony:

Q: Dr. Sisk, speaking about the early impact on a child, based on your work with children and your educational background in child development, what would you expect the strength of a bond to be between an infant and a parent that it sees on a weekly basis for an hour visit during the first year of its life?

A: Not very significant.

The trial court's finding that A.H. had been abused or neglected under section 211.447.4(2) was not against the weight of the evidence within the record.

▆▆▆ The trial court terminated Mother's parental rights in A.H. by authority of section 211.447.4(6), also. The statute provides in pertinent part:

4. The juvenile officer or the division may file a petition to terminate the parental rights of the child's parent when it appears that one or more of the following grounds for termination exist:

(6) The parent is unfit to be a party to the parent and child relationship because of a consistent pattern of committing a specific abuse, including but not limited to, abuses as defined in section

5. Mother pleaded guilty to third degree assault of a law enforcement officer in April 1997 and was placed on probation.

455.010, RSMo, child abuse or drug abuse before the child or of specific conditions directly relating to the parent and child relationship either of which are determined by the court to be of a duration or nature that renders the parent unable, for the reasonably foreseeable future, to care appropriately for the ongoing physical, mental or emotional needs of the child.

§ 211.447.4(6). The statute permits a court to presume that a parent is unfit when the parent's rights as to another child or other children have been involuntarily terminated under Missouri law or similar laws in other states within a three-year period immediately prior to the instant termination adjudication.

It is presumed that a parent is unfit to be a party to the parent-child relationship upon a showing that within a three-year period immediately prior to the termination adjudication, the parent's parental rights to one or more other children were involuntarily terminated pursuant to subsection 2 or 3 of this section or subdivisions (1), (2), (3) or (4) of subsection 4 of this section or similar laws of other states.

§ 211.447.4(6). Such presumption of unfitness is couched on a prior judicial determination that terminated the parental rights of the parent in another child because one or more of the enumerated statutory grounds for termination in section 211.447 existed. The presumption of unfitness is rebuttable and can be overcome by evidence that the circumstances that led to the termination of the parent's parental rights in the other child no longer exist or that the parent is no longer unfit.

The trial court found that Mother was an unfit parent because Mother had not maintained stable housing since A.H.'s birth and Mother's parental rights to B.H. were involuntarily terminated within the three years preceding the hearing § 211.447.4(6). Mother claims on appeal that the trial court's finding of unfitness under section 211.447.4(6) was against the weight of the evidence. She argues that sufficient evidence of her fitness was presented to rebut the statutory presumption of unfitness arising from the previous termination of her parental rights in B.H. Specifically, Mother contends that the evidence at trial demonstrated that her circumstances were radically different from those that led to termination of her parental rights in her first child.

At the hearing on the petition, Mother testified that she had lived at her current residence for the past eight months, that she had not used drugs for the past six months and was regularly attending Narcotics Anonymous meetings, and that she was taking classes to obtain her GED to better qualify herself for a job. The record also showed that Mother received above average scores on a parenting inventory administered to her as part of the psychological evaluation. Such evidence, argues Mother, was indicative of her parental fitness.

As discussed above, evidence in the record disclosed that since the birth of A.H., Mother's housing situation had been extremely unstable and her employment history nonexistent. Furthermore, while Mother's scores on the parenting inventory were good and indicated her ability to identify traditional parenting practices, Mother's overall psychological evaluation was poor. At the conclusion of the entire evaluation, the psychologist diagnosed Mother with neglect of children, borderline intellectual functioning, and antisocial personality disorder. The testifying psychologist noted that Mother did not accept responsibility for the lack of care of her first child, B.H. He also noted that Mother did not acknowledge that she needed to make any major changes in her life. The psychologist concluded that Mother's prognosis was guarded, that expectations for services were long term, and that the child needed stability as early as possible. Based on this evidence, Mother failed to overcome the statutory presumption of unfitness under section 211.447.4(6).

The trial court's determinations that the child was abused or neglected, that Mother was unfit to be a party to the parent/child relationship, and that termination of Mother's parental rights was in the best interest of the child were not against the weight of the evidence. The judgment terminating Mother's parental rights in A.H. is affirmed.

All concur.