39 S.W.3d 847 (2001)
In the Interest of A.A.R., Plaintiff.
Juvenile Officer, Respondent,
v.
B.R. (Natural Mother), Appellant.
No. WD 58471.
Missouri Court of Appeals, Western District.
March 20, 2001.
*848 Christopher C. Fink, Cameron, for appellant.
*849 Christopher P. Raynes, Trenton, for respondent.
Thomas J. Keedy, Unionville, for plaintiff.
Before ULRICH, P.J., EDWIN H. SMITH, J. and NEWTON, J.
ULRICH, Presiding Judge.
The natural mother, B.R. (Mother), appeals from the judgment of the trial court terminating her parental rights in her minor daughter, A.A.R., born on February 26, 1998. The court terminated the parental rights of Mother in the child based on sections 211.447.2(1) and 211.447.4(3), RSMo (Supp.1998). Mother contends that the trial court erred in terminating her parental rights because the trial court failed to consider the detrimental effect that the foster mother's presence during visitation had on the natural mother's opportunity for reunification with her child. Additionally, she contends that the trial court erred in failing to make all of the findings required under section 211.447.4(3) and further that some of the findings made by the court are not supported by clear, cogent and convincing evidence. The judgment of the trial court is reversed.

I. Facts
B.R. (Mother) is the natural mother of A.A.R., born on February 26, 1998. The day after the child's birth, the hospital staff filed a report with the Grundy County Division of Family Services alleging that the child was not safe with Mother because Mother lacked parenting skills and was unable to provide and care for the child.[1] The juvenile court took legal custody of the child on March 2, 1998, upon petition filed by the Grundy County Juvenile Office, and the court physically placed the child in foster care where she has been ever since.[2] Sometime after placement, the foster parents expressed a desire to adopt A.A.R. if her mother's parental rights were ever terminated.
While in foster care, the Juvenile Office allowed Mother supervised visits with A.A.R. The visits were scheduled to take place at the Livingston County Division of Family Services, but on occasion, the visits occurred at the Grundy County Division of Family Services. Lucinda Dolan, a Livingston County DFS caseworker, supervised all the visits in Livingston County. Mary Ann Chumbley, a children's service worker with the Division of Family Services in Grundy County, was responsible for the supervision of the visits that occurred in Grundy County. Both Ms. Dolan and Ms. Chumbley testified at trial that although the foster mother may have been present during some of Mother's visitations with A.A.R., she was never responsible for the supervision of such visits.
The juvenile officer filed a petition for termination of Mother's parental rights on August 16, 1999. The petition for termination alleges that statutory conditions exist for the termination pursuant to sections 211.447.2(1) and 211.447.4(3) and that termination would be in A.A.R.'s best interest. The specific conditions alleged included that: 1) A.A.R. has been in foster care for at least fifteen of the most recent twenty-two months; and 2) A.A.R. has been under the jurisdiction of the juvenile court for a period of one year, and the conditions which led to the assumption of jurisdiction still persist, or conditions of a potentially harmful nature continue to exist, and that there is little likelihood that those conditions will be remedied at an early date so that A.A.R. can be returned to Mother in the near future, and the continuation of the parent-child relationship greatly diminishes A.A.R.'s prospects *850 for early integration into a stable and permanent home.
The trial court made findings and terminated Mother's parental rights to A.A.R. on both grounds alleged. This appeal followed.

II. Standard of Review
The decision of the trial court to terminate the rights of a parent to a child will be affirmed on appeal unless the record contains no substantial evidence to support the decision, the decision is against the weight of the evidence, or the trial court erroneously declares or applies the law. In re A.H., 9 S.W.3d 56, 59 (Mo.App. W.D.2000). In reviewing a trial court's decision to terminate parental rights, an appellate court views the evidence and its reasonable inferences in a light most favorable to the decision. Id. "An appellate court also defers to a trial court's ability to determine the witnesses' credibility and to choose between conflicting evidence." Id.
A trial court may terminate the rights of a parent to a child where it finds that the termination is in the best interests of the child and where it appears by clear, cogent and convincing evidence that grounds exist for the termination as provided in subsection 2, 3, and 4 of section 211.447. § 211.447.5 "Clear, cogent and convincing evidence in an action for termination of parental rights is evidence that instantly tilts the scales in favor of termination when weighed against the evidence in opposition and the finder of fact is left with the abiding conviction that the evidence is true." In re A.H., 9 S.W.3d at 59 (quoting In re R.K., 982 S.W.2d 803, 806 (Mo.App. W.D.1998)).

III. Points on Appeal
In her first point on appeal, Mother claims that the trial court erred in failing to consider the effect that the foster mother's presence during visitation and involvement in the juvenile proceedings had on the likelihood that Mother would be reunified with her child. Specifically, she contends that because the foster mother had expressed an interest in adopting A.A.R. if Mother's parental rights were terminated, a conflict of interest existed between the foster mother and the natural mother such that by allowing the foster mother to supervise Mother's visits with A.A.R., DFS's efforts to reunify A.A.R. with Mother were not reasonable, and the trial court failed to consider this conflict.
First, Mother cites no authority for the proposition that the foster mother's presence created a conflict of interest that was disadvantageous to Mother's opportunity for reunification. The facts and issues in the single authority cited by Mother, In re Trapp, 593 S.W.2d 193 (Mo. banc 1980), are different from the facts and issue in the case now considered by this court. In Trapp, the foster parents sought intervention in the termination proceedings of a minor child as an interested party, which interjected the false issue of which party was more fit to have custody of the minor child. In this case, Mother, however, does not argue that the foster mother's presence and involvement in the visitation and juvenile proceedings forced the trial court to determine which parent was more fit.
Secondly, the record, viewing the evidence and its reasonable inferences in a light most favorable to the termination, does not support Mother's contention that the foster mother supervised the visitation between Mother and A.A.R. The record indicates that Mother's visits with A.A.R. occurred at the Division of Family Services in either Livingston or Grundy County where they were supervised by DFS caseworkers. Specifically, Lucinda Dolan, a Livingston County DFS caseworker, testified that she supervised all the visits in Livingston County, and Mary Ann Chumbley, a children's service worker with the Division of Family Services in Grundy County, testified that she was responsible for the supervision of the visits that occurred in Grundy County.
*851 Both Ms. Dolan and Ms. Chumbley further testified at trial that although the foster mother may have been present during some of Mother's visitations with A.A.R., she was never responsible for the supervision of such visits. The record indicates that the foster mother was simply used as a teaching tool or learning resource for the natural mother during some visitations. The foster mother sat in the back of the visitation room and brought materials to occupy her time, but her presence was designed to give Mother the opportunity to make inquiries of the foster mother regarding A.A.R.'s eating and sleeping habits, growth and development, and any other question posed by Mother. Once Mother expressed her hostility at the presence of the foster mother during visitation, the foster mother discontinued her presence at the visits and Mother was then provided the opportunity to interact with her child absent the presence of the foster mother. Mother's interaction with A.A.R. did not improve.
Finally, even assuming, arguendo, that Mother established that the foster mother supervised her visits with A.A.R. when the foster mother was present, Mother failed to demonstrate that the trial court did not consider the foster mother's interest and presence in deciding to terminate Mother's parental rights in A.A.R. Absent a showing to the contrary, an appellate court will presume the trial court considered all of the evidence before it in making its determination. Halupa v. Halupa, 980 S.W.2d 325, 331 (Mo.App. E.D. 1998). Mother's first point is denied.
In her second point on appeal, Mother contends that the trial court erred in terminating her parental rights because not all of the required statutory prerequisites for termination of parental rights in section 211.447.4(3) were properly set forth in the court's judgment, and additionally, the findings stated are not supported by clear, cogent, and convincing evidence.
The juvenile court's power to terminate parental rights is purely statutory. In re N.M.J., 24 S.W.3d 771, 781 (Mo.App. W.D.2000). The termination of parental rights, therefore, demands literal compliance with the statutory authority from which the power is derived. Id. Section 211.447.4(3) provides:
4. The juvenile officer or the division may file a petition to terminate the parental rights of a child's parent when it appears that one or more of the following grounds for termination exist:
* * *
(3) The child has been under the jurisdiction of the juvenile court for a period of one year, and the court finds that the conditions which led to the assumption of jurisdiction still persist, or conditions of a potentially harmful nature continue to exist, that there is little likelihood that those conditions will be remedied at an early date so that the child can be returned to the parent in the near future, or the continuation of the parent-child relationship greatly diminishes the child's prospects for early integration into a stable and permanent home. In determining whether to terminate parental rights under this subdivision, the court shall consider and make findings on the following:
(a) The terms of a social service plan entered into by the parent and the division and the extent to which the parties have made progress in complying with those terms;
(b) The success or failure of the efforts of the juvenile officer, the division or other agency to aid the parent on a continuing basis in adjusting his circumstances or conduct to provide a proper home for the child;
(c) A mental condition which is shown by competent evidence either to be permanent or such that there is no reasonable likelihood that the condition can be reversed and which renders the parent unable to knowingly provide the child the necessary care, custody and control;

*852 (d) Chemical dependency which prevents the parent from consistently providing the necessary care, custody and control over the child and which cannot be treated so as to enable the parent to consistently provide such care, custody and control....
When terminating the parental rights of an individual pursuant to this section, the court is required to consider and make findings as to the four conditions specified in subparagraphs (a) through (d), even if only to state that the condition is irrelevant. In re N.M.J., 24 S.W.3d at 781. This statutory mandate to make findings may not be overlooked on appeal. Id.
In regard to subparagraph (a) of section 211.447.4(3), Mother contends that the trial court failed to identify in its findings a written social service agreement, any terms of such an agreement or plan, or the extent to which the parties have made progress in complying with the terms of the agreement. While the trial court is not required to quote verbatim in its judgment the terms of the plan, the court is required to make findings which sufficiently identify the plan and the terms thereof. Id.
In this case, the record does not disclose any findings regarding the terms of the social service plan entered into by the parties as required by section 211.447.4(3)(a). Because the trial court failed to make findings in compliance with section 211.447.4(3)(a), the judgment must be reversed and remanded to the trial court with directions that it make additional findings with respect to the factors specified in the statute.
Additionally, Mother contends that the trial court's finding pursuant to section 211.447.4(3)(d), that Mother currently suffers from alcoholism, a factor considered in terminating her parental rights, is not supported by clear, cogent and convincing evidence.
The trial court's finding that Mother abuses alcohol is not supported by the record. The only evidence pertaining to the issue of Mother's purported alcoholism is the testimony of Frederick Nolan, Ph. D., and Mother. Dr. Nolan is a licensed psychologist hired by the Grundy County Division of Family Services to perform a psychological evaluation on Mother. He testified that Mother had reported to him that she had abused alcohol in the past, but that she had been sober for the past eighteen months. Mother's testimony indicated that she no longer succumbed to the desire to drink alcoholic beverages. She testified that she had been sober for over two years and that she continued to regularly obtain assistance from Alcoholics Anonymous.
The record contains no evidence that Mother presently abuses alcohol, much less that her alcohol dependency cannot be treated so as to enable her to consistently provide the necessary care, custody and control over her child. Appellant's point two is granted.

IV. Conclusion
The judgment of the circuit court terminating the parental rights of Mother to A.A.R., pursuant to sections 211.447.2(1) and 211.447.4(3), is reversed. The case is remanded to the trial court with directions to make appropriate findings supported by the record, and to enter judgment as it determines appropriate based on the record in accordance with section 211.447.
EDWIN H. SMITH, J., and NEWTON, J., concur.
NOTES
[1] The report was returned unsubstantiated.
[2] The record and judgment are not clear on what the conditions were that originally lead to the assumption of jurisdiction. Because this case is being remanded for further findings, clarification of this issue is appropriate.