**In the Interest of T.A.S., Plaintiff, Respondent,**

**Juvenile Officer, Respondent,**

v.

**P.S.L. (Mother), Appellant,**

**B.R.S. (Father), Defendant.**

**No. WD 59917.**

Missouri Court of Appeals, Western District.

Dec. 14, 2001.

---

1. All subsequent statutory citations are to RSMo (2000) unless otherwise indicated.

Susan M. Venturella, Columbia, for appellant.

Melissa McAllister, Columbia, for respondent.

Glen R. Ehrhardt, Columbia, for plaintiff.

Before BRECKENRIDGE, P.J., NEWTON and HARDWICK, JJ.

PATRICIA BRECKENRIDGE, Judge.

P.S.L. (Mother) appeals the termination of her parental rights to her daughter, T.A.S. On appeal, Mother contests the sufficiency of the evidence to support the trial court's determination that termination was appropriate on the grounds of failure to rectify and parental unfitness, the adequacy of the court's finding on one of the best interest factors, the sufficiency of the evidence to support the court's finding that termination was in T.A.S.'s best interest, and the denial of her motion for new trial on the basis of newly-discovered evidence. Because this court finds that the court improperly based Mother's failure to rectify on her incarceration, and the evidence was insufficient to support termination of Mother's parental rights on the basis of parental unfitness, the judgment of the trial court terminating Mother's parental rights to T.A.S. is reversed.

**Factual and Procedural Background**

In reviewing the sufficiency of the evidence to terminate parental rights, this court views the evidence, and any inferences therefrom, in the light most favorable to the trial court's judgment. *In re J.K.*, 38 S.W.3d 495, 499 (Mo.App.2001). Mother and her former husband, B.R.S. (Father), had two children: a son, B.R.S., Jr., who was born on November 24, 1988; and a daughter, T.A.S., who was born on January 15, 1990.[1] On April 17, 1991, B.R.S., Jr., was made a ward of the court after the court found that Mother's whereabouts were unknown for a period of approximately seven months in 1990; Mother temporarily placed B.R.S., Jr., with her father, who has a history of alcoholism and a criminal record; Mother was charged with child neglect and endangering the welfare of a child after she was involved in a physical altercation with Father while she was holding B.R.S., Jr.; and on another occasion while she was holding B.R.S., Jr., Mother was chased and swung at by her father, who was intoxicated at the time.

Mother gave birth to another son, F.D., Jr., in September 1991, while she and Father were separated.[2] Mother and Father divorced in February 1993. Mother married another man, L.L., in October 1993, but they separated in January 1994. In February 1994, Mother was arrested and charged with first-degree assault and armed criminal action for stabbing her cousin in the shoulder with a knife. Mother was subsequently convicted, and on June 6, 1994, Mother was sentenced to ten years imprisonment.

In September 1994, while Mother was incarcerated, she gave birth to another daughter. This daughter died in October 1994, however, while she was in the custody of her father, S.B. After Mother obtained a divorce from L.L., she married S.B. in December 1994.

On November 6, 1995, the juvenile court entered a judgment terminating Mother's and Father's parental rights to B.R.S., Jr., pursuant to § 211.447.2(3), RSMo 1990. Specifically, the court found that B.R.S., Jr., had been under the juvenile court's jurisdiction for a period in excess of one year, the conditions that led to the assumption of jurisdiction still persisted, there was little likelihood that the conditions would be remedied at an early date, and continuation of the parent-child relationship greatly diminished B.R.S., Jr.'s prospects for early integration into a stable and permanent home. Mother and Father appealed, and this court reversed and remanded the termination judgment because the trial court had failed to make the proper findings under § 211.447.2(3)(a)-(d), RSMo 1990. *In Interest of B.R.S.*, 937 S.W.2d 773 (Mo.App. 1997). On remand, the trial court entered a new judgment terminating Mother's parental rights, dated February 14, 1997. This court affirmed the February 14, 1997, judgment in *In Interest of B.R.S., Jr.*, 950 S.W.2d 335 (Mo.App.1997).

On December 13, 1995, while Mother was incarcerated, the juvenile court took jurisdiction over T.A.S. In February 1996, the court entered an order of disposition placing T.A.S. with Father. The juvenile

---

1. The judgment terminating Mother's parental rights to T.A.S. also terminated Father's parental rights. Because Father does not appeal the termination of his parental rights to T.A.S., this court will focus primarily on the facts pertinent to the termination of Mother's rights.

2. F.D., Jr., was living with his father in California as of February 14, 1997. There was no evidence adduced as to F.D., Jr.'s current residence.

court terminated its jurisdiction over T.A.S., however, on July 22, 1996.

On February 27, 1997, the juvenile officer filed a petition in which it alleged that T.A.S. was in need of the care and treatment of the court. At that time, T.A.S. was in Father's custody, and Mother remained incarcerated. In the petition, the juvenile officer alleged that, on February 25, 1997, Father had physically abused T.A.S., and had physically assaulted T.A.S.'s maternal aunt in T.A.S.'s presence, which resulted in Father's arrest. After that incident occurred, T.A.S. said she was afraid of Father and refused to be near him. The juvenile officer also alleged that the day after the incident, while Father was at the juvenile office, his "breath had a strong odor of alcohol," and T.A.S. told the juvenile officer that Father drinks on a daily basis. According to the juvenile officer, during the 1996–1997 school year, T.A.S. "exhibited extremely inappropriate behaviors which include[d]: hitting other students without provocation, yelling at inappropriate times, and being verbally disrespectful towards school staff." The juvenile officer asked that T.A.S. be made a ward of the court and placed in the custody of the Division of Family Services (DFS).

On March 26, 1997, the juvenile court took jurisdiction over T.A.S. and made her a ward of the court. The court placed T.A.S. in the custody of DFS, to be placed in foster care.[3] On June 19, 1998, the juvenile officer filed a petition to terminate Mother's parental rights to T.A.S.[4] The juvenile officer amended the petition in November 1998, and again on the first day of the hearing on the petition, in July 1999. In the amended petition, the juvenile officer sought termination of Mother's rights under § 211.447.2(3), RSMo Cum.Supp. 1997,[5] in that Mother had failed to rectify the conditions that led to the court's assumption of jurisdiction, and under § 211.447.2(6), in that Mother was presumed to be unfit to be a party to the parent-child relationship because her parental rights to B.R.S., Jr., were terminated on February 14, 1997.

During the hearing on the termination petition in July and October 1999, the court took judicial notice of the termination case involving B.R.S., Jr., the orders concerning the court's assumption of jurisdiction over T.A.S. the first time in December 13, 1995, and the orders concerning the court's assumption of jurisdiction for the second time on March 26, 1997.

3. The legal file does not indicate that Mother was ever served with the juvenile officer's February 27, 1997, petition seeking the court's jurisdiction over T.A.S. It also does not indicate that Mother received notice of either the March 26, 1997 hearing and judgment in which the court took jurisdiction over T.A.S. and made her a ward of the court, or the May 12, 1997 order of disposition. The trial court appeared to acknowledge this deficiency when, simultaneously with the trial on the petition for termination, it proceeded against Mother on the allegations of the petition seeking jurisdiction and subsequently entered its order, as to Mother, on this petition. Because Mother does not raise these issues on appeal, however, this court will not address them. Rule 84.13(a) (stating that, aside from issues of the trial court's subject matter juris-

diction and the sufficiency of the pleadings to state a claim or a legal defense to a claim, this court shall not consider allegations of error in civil appeals that have not been briefed).

4. The petition requested that Father's parental rights to T.A.S. also be terminated.

5. All statutory references are to the Revised Statutes of Missouri Cumulative Supplement 1997, unless otherwise indicated. Effective July 1, 1998, § 211.447 was amended and the grounds for termination were renumbered. This court continues to refer to the 1997 version, however, since it was the version in effect when the termination petition was filed. *TAS I*, 32 S.W.3d at 808 n. 2.

The juvenile officer presented the testimony of Wendy Morgan, a licensed clinical social worker who began working with T.A.S. in October 1995. The juvenile officer also presented the testimony of Michelle Croner, the DFS social worker who managed T.A.S.'s case from March 1997 to June 1998. Mother testified on her own behalf.

On December 6, 1999, the trial court entered its judgment terminating Mother's parental rights to T.A.S. Mother appealed. This court reversed and remanded the judgment in *In re T.A.S.*, 32 S.W.3d 804 (Mo.App.2000) (*T.A.S.I*), because (1) with regard to the failure to rectify or remedy ground for termination, this court was unable to "determine from the judgment what conditions the trial court determined led to the assumption of jurisdiction, and which of those conditions the trial court found still persisted," *id.* at 812; (2) with regard to the parental unfitness ground for termination, the trial court failed to enter a finding as to whether Mother was currently unfit to be a party to the parent and child relationship and, thus, whether Mother had overcome the presumption of unfitness based upon the prior termination of her parental rights to B.R.S., Jr., *id.* at 815; and (3) the court failed to make proper findings on two of the "best interest" factors contained in § 211.447.3, namely, the extent to which Mother maintained visitation with T.A.S., and Mother's ability to financially contribute to the cost of T.A.S.'s care and maintenance, *id.* at 810–811.

On remand, the trial court entered its judgment terminating Mother's parental rights to T.A.S. on March 26, 2001. On April 5, 2001, Mother filed a motion for new trial in which she asked the court to set aside the judgment and grant her a new trial on the basis of newly-discovered evidence, specifically, that she was released from the department of corrections on March 15, 2001. The trial court denied Mother's motion.[6] Mother filed this appeal.

## Standard of Review

This court will affirm the trial court's judgment terminating Mother's parental rights unless there is no substantial evidence to support it, it is against the weight of the evidence, or it erroneously declares or applies the law. *In re N.M.J.*, 24 S.W.3d 771, 777 (Mo.App.2000). A reversal or remand is necessary only if this court is left with a firm impression that the judgment is wrong. *In Interest of J.N.C.*, 913 S.W.2d 376, 379 (Mo.App.1996). A statutory ground for termination of parental rights must be proven by clear, cogent, and convincing evidence. Section 211.447.2. " 'Clear, cogent and convincing evidence in an action for termination of parental rights is evidence that instantly tilts the scales in favor of termination when weighed against the evidence in opposition and the finder of fact is left with the abiding conviction that the evidence is true.' " *In re A.A.R.*, 39 S.W.3d 847, 850 (Mo.App.2001) (quoting *In re A.H.*, 9 S.W.3d 56, 59 (Mo.App.2000)) (citation omitted).

Mother alleges nine points of error on appeal. This court will address only those that are dispositive of the appeal.

## Failure to Rectify Improperly Based Upon Incarceration

In her second and eighth points, Mother contends that the evidence was insufficient

**6.** Because Mother was incarcerated during the trial on this case, and the court denied Mother's request in her motion for new trial to consider evidence of her release, this court will continue to refer to Mother as incarcerated.

to support the court's determination that termination was appropriate under § 211.447.2(3) on the ground that Mother failed to rectify the conditions that existed when the court assumed jurisdiction over T.A.S. on March 26, 1997. Section 211.447.2(3) provides that the trial court may terminate the rights of a parent if it finds by "clear, cogent and convincing evidence" that:

> The child has been under the jurisdiction of the juvenile court for a period of one year, and the court finds that the conditions which led to the assumption of jurisdiction still persist, or conditions of a potentially harmful nature continue to exist, that there is little likelihood that those conditions will be remedied at an early date so that the child can be returned to the parent in the near future, or the continuation of the parent-child relationship greatly diminishes the child's prospects for early integration into a stable and permanent home.

In determining that termination was appropriate on this basis, the trial court did not find that conditions of a potentially harmful nature continued to exist. Instead, the court found that the conditions which led to the assumption of jurisdiction still persisted, and the court then listed the two conditions. Specifically, the court stated:

> 7. The conditions which led to the assumption of jurisdiction still persist and there is little likelihood that these conditions will be remedied at an early date so that the juvenile can be returned to the parents in the near future, and continuation of the parent-child relationship greatly diminishes the juvenile's prospects for early integration into a stable and permanent home[ ], in that:

> a. On February 25, 1994, the juvenile's mother was arrested on charges of First Degree Assault and Armed Criminal Action, and on June 6, 1994, the juvenile's mother was sentenced to ten years in the Missouri Department of Corrections.

> b. On February 27, 1997,[7] at the time when jurisdiction was assumed over the juvenile, in part because of lack of a suitable custodian for the juvenile, the juvenile's mother continued to reside in the Missouri Department of Corrections, has remained there, and continues to reside in the Department of Corrections at this time, and the juvenile remains without a suitable custodian at this time.

Thus, the conditions the trial court found that led to the assumption of jurisdiction, and that continued to persist, were that Mother was sentenced to ten years in prison after being convicted of first-degree assault and armed criminal action, and that Mother continued to reside in the department of corrections.

Mother argues that the judgment indicates that her incarceration was the sole persistent condition upon which the trial court relied in determining that termination on the basis of her failure to rectify was appropriate, and incarceration, in and of itself, cannot be grounds for termination of her parental rights. In support of her argument, she cites § 211.447.3(6). Section 211.447.3 lists seven factors the court is to consider and make findings on in determining whether termination is in the child's best interest. One of these factors, § 211.447.3(6), reads:

> The conviction of the parent of a felony offense that the court finds is of such a nature that the child will be deprived of a stable home for a period of years;

---

**7.** The record indicates that the juvenile officer filed the petition seeking jurisdiction on February 27, 1997, but the court did not assume jurisdiction over T.A.S. until March 26, 1997.

*provided, however, that incarceration in and of itself shall not be grounds for termination of parental rights.*

(Emphasis added.)

 The juvenile officer contends that, in addition to Mother's incarceration, there were other conditions that led to the assumption of jurisdiction that continued to persist, including the conditions which led to the termination of Mother's parental rights to B.R.S., Jr., and the conditions which led to the court's assuming jurisdiction over T.A.S. the first time in December 1995. The trial court did not cite any other persistent conditions besides Mother's incarceration, however. The interpretation of a court order is a question of law which this court reviews *de novo*. *Jacobs v. Georgiou*, 922 S.W.2d 765, 769 (Mo.App. 1996). It is clear in this case, especially in light of the fact that the two persistent condition paragraphs in the judgment were added after this court directed the trial court in *T.A.S. I* to "make a finding as to what conditions that led to the assumption of jurisdiction still persist," 32 S.W.3d at 812, that Mother's incarceration was the sole condition upon which the trial court relied to conclude that termination was appropriate on the basis of Mother's failure to rectify. The court's reliance on Mother's incarceration, in and of itself, as a basis for termination was erroneous. Section 211.447.3(6). Therefore, the trial court's finding that termination of Mother's parental rights was appropriate on the basis of her failure to rectify under § 211.447.2(3) is reversed.

### Presumption of Parental Unfitness Applied

The other ground upon which the trial court relied to terminate Mother's parental rights was parental unfitness. In her third point on appeal, Mother argues that the trial court erred in applying the presumption of parental unfitness to her because the involuntary termination of her parental rights to B.R.S., Jr., was outside the statutory time limit for applying the presumption. Section 211.447.2(6) provides for termination where:

The parent is unfit to be a party to the parent and child relationship because of a consistent pattern of committing a specific abuse, including but not limited to, abuses as defined in section 455.010, RSMo, child abuse or drug abuse before the child or of specific conditions directly relating to the parent and child relationship either of which are determined by the court to be of a duration or nature that renders the parent unable, for the reasonably foreseeable future, to care appropriately for the ongoing physical, mental or emotional needs of the child. *It is presumed that a parent is unfit to be a party to the parent-child relationships upon a showing that within a three-year period immediately prior to the termination adjudication, the parent's parental rights to one or more other children were involuntarily terminated under subdivision (1), (2), (3) or (4) of this section or similar laws of other states.*

(Emphasis added.) In concluding that termination was appropriate on this ground, the trial court stated, "[M]other is currently unfit to be a party to the parent child relationship in that [Mother]'s parental rights to her son, [B.R.S.], Jr., were involuntarily terminated on February 14, 1997." Mother argues that because this court reversed and remanded the judgment in *T.A.S. I*, and the trial court's judgment on remand was not entered until over four years after the entry of the judgment terminating Mother's parental rights to B.R.S., Jr., the termination of her rights to B.R.S., Jr., was not "within a three-year

period immediately prior to the termination adjudication," concerning T.A.S.

To support her contention, Mother asserts that the date of the "termination adjudication" in this case was the date the judgment was entered on remand, which was March 26, 2001. Mother argues that because this court, in *T.A.S. I*, held that the statutory period within which the presumption applies did not *begin* until the court entered its judgment on remand terminating her parental rights to B.R.S., Jr., 32 S.W.3d at 814, the statutory period did not *end* until the court entered its judgment on remand terminating her parental rights to T.A.S. The issue raised and addressed by this court in *T.A.S. I*, however, was the effect of this court's reversal and remand on determining the date Mother's parental rights to B.R.S., Jr., were "involuntarily terminated" under the statute, i.e., the starting date for the application of the presumption, and not the effect of a reversal and remand on determining the date of the "termination adjudication" involving T.A.S., i.e., the ending date for the application of the presumption. Because the issue in the present case is when the termination adjudication involving T.A.S. occurred, this court's opinion in *T.A.S. I* as to when Mother's rights to B.R.S., Jr., were involuntarily terminated does not apply.[8]

In arguing that the date of the termination adjudication involving T.A.S. was March 26, 2001, Mother assumes that the term "adjudication" in the statute means the date the final judgment termi-

nating her parental rights to T.A.S. was entered. The interpretation of a statute is a question of law, however, which this court reviews *de novo*. *Snyder v. Dep't of Elementary & Secondary Educ.*, 952 S.W.2d 764, 767 (Mo.App.1997). When interpreting a statute, courts must "ascertain the intent of the legislature from the language used and give effect to that intent, if possible, and to consider the words used in their plain and ordinary meaning." *Butler v. Mitchell-Hugeback, Inc.*, 895 S.W.2d 15, 19 (Mo. banc 1995). Only when language is ambiguous, or when it leads to an illogical result, may courts look past the plain and ordinary meaning of a statute. *State ex rel. Md. Heights Fire Prot. Dist. v. Campbell*, 736 S.W.2d 383, 387 (Mo. banc 1987). The plain and ordinary meaning is generally derived from the dictionary. *Akers v. Warson Garden Apartments*, 961 S.W.2d 50, 53 (Mo. banc 1998).

The dictionary definition of "adjudication" is "the act or process of adjudicating." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 27 (1971). The verb "adjudicate" means "to settle finally (the rights and duties of the parties to a court case) on the merits of issues raised: enter on the records of a court (a final judgment, order, or decree of sentence)." *Id.* Thus, an "adjudication" is the act or process of settling finally the rights and duties of the parties to a court case. The *process* of settling the rights and duties of the parties to a court case includes the reception of evidence at trial prior to the entry of the judgment. *See, e.g., State v.*

---

8. In deciding that the presumption of parental unfitness applied because Mother's parental rights to B.R.S., Jr., were terminated within three years of the termination adjudication involving T.A.S., this court stated in *T.A.S. I* that "[t]he judgment terminating parental rights in the present case was entered on December 6, 1999, within three years of the February 14, 1997 termination of the moth-

er's rights in regard to B.R.S., Jr." 32 S.W.3d at 814. To the extent that this statement can be interpreted as finding the date of the termination adjudication involving T.A.S. to be the date the judgment was entered, it is dicta and is not controlling, because the only issue raised and addressed in *T.A.S. I* was the date Mother's parental rights to B.R.S., Jr., were involuntarily terminated.

*Huhn,* 346 Mo. 695, 142 S.W.2d 1064, 1066 (banc 1940) (stating that "[a]n adjudication involves the exercise of judicial power through a hearing upon an issue, the receiving and weighing of evidence and the act of rendering a judgment"). The reasonable interpretation of the phrase "termination adjudication" includes the trial on the termination petition. The court renders its decision based upon the status of the parties as of the date of the trial, not as of the date the court later enters its judgment.

The trial in this case began on July 19, 1999, well within three years of the involuntary termination of Mother's parental rights to B.R.S., Jr., on February 14, 1997. Therefore, this court finds that the presumption of Mother's unfitness due to the termination of her parental rights to B.R.S., Jr., applied.

### Insufficient Evidence of Parental Unfitness

Having found that the involuntary termination of Mother's parental rights to B.R.S., Jr., occurred within three years prior to the termination adjudication in this case and, therefore, the presumption of her unfitness applied, this court now addresses Mother's claim in her sixth point that she successfully rebutted the presumption. The presumption of unfitness in § 211.447.2(6) can be rebutted by "evidence that the circumstances that led to the termination of the of the parent's parental rights in the other child no longer exist or that the parent is no longer unfit." *A.H.,* 9 S.W.3d at 61.

Mother's parental rights to B.R.S., Jr., were terminated because Mother was unable to rectify the conditions which led to the court's assumption of jurisdiction over B.R.S., Jr., and the continuation of the parent-child relationship greatly diminished B.R.S., Jr.'s prospects for integration into a stable and permanent home. Specifically, in the judgment terminating Mother's parental rights to B.R.S., Jr., the court concluded that termination on the basis of Mother's failure to rectify was appropriate because Mother failed to regularly participate in and benefit from the services DFS offered her, including "Parents as Teachers Services; City Health Nurse Visits; Individual Counseling; Conjoint Counseling; G.E.D.; Job Training Services; Parenting Classes; Weekly Visitation with the juvenile; and Parent Aide Services." The court also relied upon Mother's failure to maintain stable housing as ordered by the court.

The evidence regarding Mother's current fitness to parent T.A.S. was that, while incarcerated, Mother took classes in anger management, self-esteem, parenting, and obtaining her GED. Mother also met with a counselor every week, maintained her sobriety, attended Alcoholics Anonymous meetings, and held several jobs within the prison. While Mother did not contribute any of her $7.50 per month salary from these prison jobs to T.A.S.'s care, the evidence indicated that Mother did take advantage of programs designed to enable inmates to provide clothing and presents to their children. Additionally, Ms. Croner, the DFS case worker from March 1997 to June 1998 who testified on behalf of the juvenile officer, testified that Mother wrote T.A.S. at least once a month, requested frequent visitation with T.A.S., and that the visits between Mother and T.A.S. "always went very well."

The juvenile officer admits that Mother "has demonstrated an ability to participate in services, remain sober, and show an interest in her child while in the structured environment of the department of corrections," but argues that Mother "has failed to demonstrate said abilities outside of that setting." Furthermore, Ms. Morgan,

the licensed clinical social worker who has counseled T.A.S. since October 1995, testified that Mother would need to be out of the prison system for at least a year establishing consistent employment and stable housing before she could even begin to address parenting issues.

The reason why Mother has been unable to demonstrate the ability to participate in services, remain sober, and show an interest in T.A.S. outside of the institutional setting, however, is because she has remained in the institutional setting since 1994. Her continued incarceration is also the reason why she cannot begin establishing consistent employment and stable housing for a year outside of the prison system before addressing parenting issues. As this court has already stated, Mother's incarceration, in and of itself, cannot serve as the basis for terminating her parental rights. Section 211.447.3(6).

The juvenile officer claims, however, that Mother's history prior to her incarceration indicates that she is currently unfit to parent T.A.S. The juvenile officer argues that Mother "spent years involved with the Division of Family Services and Juvenile Court systems and was unable to comply or cooperate while living out in the community," and that at that time, Mother "was not even willing to care for T.A.S. and gave T.A.S. to [T.A.S.'s maternal grandparents] to provide care." This court recognizes the principle that "past patterns provide vital clues to present and future conduct, and that all grounds for termination to some extent look to past conduct." *In Interest of S.H.*, 915 S.W.2d 399, 404–05 (Mo.App.1996). Here, however, Mother's past conduct, all of which occurred prior to 1994, has already been considered in that it was sufficiently poor to justify termination of her parental rights to B.R.S., Jr., and that termination raised the presumption of Mother's unfit-

ness to parent T.A.S. To then rely upon her unfitness from over five years earlier again to find that she is currently unfit would make the presumption of unfitness irrebuttable, in this case. The presumption of parental unfitness is rebuttable, however. *A.H.*, 9 S.W.3d at 61.

Mother had the burden of demonstrating that the circumstances that led to the termination of her parental rights to B.R.S., Jr., no longer existed, or that she was no longer unfit to parent T.A.S. There was evidence in the record that did so. This evidence established that Mother has been incarcerated since 1994, but was near the end of her incarceration as of the time of trial. While incarcerated, Mother demonstrated her willingness and ability to rectify her prior unfitness. Her only deficiency was her failure to pay a portion of her $7.50 per month income for T.A.S.'s support, which this court finds is *de minimis* considering the other circumstances in this case. In light of the evidence Mother presented to rebut the presumption of her unfitness, and the absence of any evidence of Mother's current unfitness besides her incarceration, this court cannot say that there was clear, cogent, and convincing evidence to support termination on the basis of Mother's current parental unfitness. Therefore, the trial court's finding that termination of Mother's parental rights to T.A.S. on the basis of parental unfitness under § 211.447.2(6) was appropriate is reversed.

### Mother's Remaining Points on Appeal

In two of Mother's remaining points on appeal, she contests the adequacy of the court's finding on one of the best interest factors in § 211.447.3, and the sufficiency of the evidence to support the court's finding that termination was in T.A.S.'s best interest. Because this court finds that termination of Mother's parental rights

was not appropriate on either of the grounds relied upon by the trial court, this court does not reach the issue of whether termination was in T.A.S.'s best interest. *In Interest of J.A.R.,* 968 S.W.2d 748, 750 (Mo.App.1998). This court's holding also renders moot Mother's allegation of error concerning the trial court's failure to grant her motion for new trial.

## Conclusion

The evidence at trial was that, while incarcerated, Mother did all that was within her power to rectify the circumstances that led to the court's assumption of jurisdiction over T.A.S., to remedy the circumstances that led to the termination of her parental rights to B.R.S., Jr., and to render herself fit to parent T.A.S. As of the trial in 1999, Mother's incarceration was nearing an end, since the evidence was that Mother's scheduled release date was sometime in 2000.[9] The statute requires clear and convincing evidence that one of the grounds for termination exists. Section 211.447.2. As this court has already stated, " '[c]lear, cogent and convincing evidence in an action for termination of parental rights is evidence that instantly tilts the scales in favor of termination when weighed against the evidence in opposition and the finder of fact is left with the abiding conviction that the evidence is true.' " *A.A.R.,* 39 S.W.3d at 850 (citations omitted). Because this court finds that the trial court erroneously relied upon Mother's incarceration to find that Mother had failed to rectify the circumstances that led to the court's assumption of jurisdiction over T.A.S., the only remaining ground upon which the termination could be upheld is Mother's unfitness to parent T.A.S. The evidence supporting parental unfitness in this case simply does not "instantly tilt the scales in favor of termi-

nation when weighed against the evidence in opposition[.]"

Therefore, the judgment of the trial court is reversed.

All concur.

---

**9.** Her actual release date was March 15, 2001.