**In the Interest of C.P.B. and K.A.B., children under 17 years of age.**

No. 43895.

Missouri Court of Appeals, Eastern District. Division Four.

Sept. 21, 1982. Rehearing Denied Oct. 15, 1982.

John C. O'Brien, St. Louis, for appellant.

Vernon R. Dawdy, Fenton, for respondent.

Stanley Schnaare, Guardian Ad Litem, Hillsboro, for children.

PUDLOWSKI, Judge.

This is an appeal by the natural mother of C.P.B. and K.A.B. from a judgment and order of the juvenile court terminating her parental rights.[1] The order placed custody of the children with the Department of Family Services of Jefferson County and recommended that the maternal grandparents be given the first opportunity to petition for transfer of custody and adoption. We reverse and remand.

Appellant was married in November, 1969. Two children were born of this marriage: C.P.B. in October, 1970, and K.A.B. in September, 1972. Shortly after the birth of K.A.B., the father left the marital home for several months. Appellant became depressed and sought counselling. The father returned, but a second separation took place in 1976 and in September, 1976 appellant and the father were divorced. Appellant was granted custody of the children and the father was ordered to pay child support. Although the father has shown little interest in visiting the children, he has continued to make regular support payments.

In April, 1977, the Jefferson County Division of Family Services received a child abuse hotline referral concerning C.P.B. and K.A.B. After an investigation, the Division took custody of the children with the approval of the Juvenile Court in Jefferson County.

The children were placed in a foster home, where they resided until July, 1979, at which time they were placed in a second foster home. The children received regular visits from appellant (except for a short period after a divorce from her second husband). They have also maintained contact with their maternal grandparents.

Appellant has sought to have the children returned to her. In June, 1979, she entered into a court-approved "180-day plan" with the Division of Family Services. The plan required that she adopt a budget, attend regular psychological counselling sessions, visit her children regularly, and keep regular appointments with her social worker. The basic purpose of that plan was to evaluate appellant and prepare her for a possible return of custody. Additional conditions were to be imposed contingent upon return of the children. Shortly before the expiration of the 180-day period, the Division of Family Services advised appellant that it had decided to withdraw all visitation rights and seek termination of her parental relationship. The petition for termination was filed in March, 1980. The petition alleged that appellant had failed to comply with the court-ordered plan, had abused her children by causing physical and emotional injury to them, and that appellant "did not demonstrate or attempt to demonstrate the mental stability or knowledge and skill required to provide for the safety and proper care" of her children.

The trial transcript fills 3 volumes, totaling almost 600 pages. The court heard testimony from several social workers, a home economist, and a psychologist, each of whom had dealt with appellant on various occasions. The maternal grandmother also

---

**1.** The natural father's rights were also terminated by the court below but he takes no part in this appeal. The father had signed a Consent to Termination of Parental Rights that was expressly made conditional on the appellant's termination of rights.

testified, as did the appellant. Some of the social workers testified that appellant had appeared to be emotionally stable and cooperative. Others maintained that appellant was hostile and subject to frequent mood changes. They noted that appellant's visits with her children were sometimes marred by arguments appellant had with the social workers who were present. On a few occasions, she also became angry with her children. Other social workers testified that their colleagues were prejudiced against appellant and considered her to be a "lost cause."

A clinical psychologist testified that she had worked with appellant on at least a weekly basis for several months. She stated that appellant was not always "in touch with reality" and that she had recommended hospitalization for appellant. She declined to enter the hospital. Appellant did, however, faithfully keep scheduled appointments. She noted that appellant was able to function quite well for limited periods of time but would react poorly to stressful incidents by swearing and shouting. This anger was expressed verbally. Appellant did not appear to be a violent person. The psychologist diagnosed appellant as suffering from a borderline personality disorder, not a psychosis. Such disorder would be treatable under proper conditions, i.e., if appellant obtained stable employment and received support from persons around her. However, it did not appear likely that appellant's circumstances would change in a manner favorable to treatment. The psychologist concluded that appellant's situation (the divorces, loss of custody, therapy, and frequent visits of social workers) would be stressful for any normal person and that her reactions were not solely a product of her mental condition. The doctor opined that a normal person, subjected to similar pressures, would react with some of the same feelings of anger, suspiciousness, and depression as the appellant.

The maternal grandmother testified that she and her second husband, residents of Tennessee, had continually expressed an interest to Division of Family Service workers in having the children live with them.

The children had visited the grandparents' home in Tennessee on several occasions before they were removed from appellant's custody and the grandparents occasionally visited or called the children in St. Louis. They regularly sent gifts to the children. The maternal grandmother stated that she and her husband had a comfortable income of $30,000 annually. She also described the dimensions of their home and their relationship within the extended family.

Appellant testified about her medical history and her relationship with her children. She denied abusing the children physically. She stated that she loved her children and had cooperated with the Division of Family Services in an effort to regain custody.

The trial court issued substantially identical orders terminating the parental rights of appellant as to each child. The orders, in pertinent part, stated that:

The Court finds it has jurisdiction herein . . . . The Court makes two findings: first, the parental rights of the natural parents should be terminated . . .; second, that the family ties should be maintained if at all possible.

The Court finds that the mother suffers from a personality disorder which the doctor says under stress results in paranoid behavior, that paranoid episodes are treatable but that the mother's prognosis for the personality disorder is that it will probably never be any better. Further, the Court finds that the mother has injured the child and can see prospect and potential of harm in the episodes which are dangerous to the welfare and well-being of the child if the parent-child relationship was allowed to continue.

The maternal grandmother has appeared here personally and expressed love and consideration for her grandchildren and also expressed a willingness on the part of herself and her husband to care for the child. The Court finds it to the best interest of the child that he have a stable relationship rather than foster care . . . .

Custody of the child is placed with the Division of Family Services of Jefferson County with instructions that maternal grandparents be given first opportunity to file and petition for transfer of custody and adoption of this child . . . .

On appeal, appellant contends 1) that the trial court's orders were defective because they failed to recite the jurisdictional facts and statutory grounds upon which termination was based; 2) that there was not clear, cogent, and convincing evidence to support an order of termination; and 3) that because less restrictive alternatives to termination were available, the termination order denied her due process of law under the 14th amendment and improperly interfered with her fundamental "right to parent." We find it unnecessary to reach the constitutional issues raised by appellant.

In his brief, the respondent agrees that the order failed to recite the jurisdictional facts and states that the judgment should be reversed and remanded, so that the trial court could properly reformulate its orders. Respondent made no effort to meet appellant's contention that the order was not supported by clear, cogent and convincing evidence.

A review of the termination statutes clearly reveals that the trial court's order was not in conformity with either § 211.482 RSMo (1980), which requires certain findings to be made in all termination orders, or § 211.447 RSMo (1980), which sets forth the grounds upon which a petition for termination may be granted. Section 211.482 states in part that: "An order of the court terminating parental rights shall be in writing and shall recite the jurisdictional facts, a factual finding of one or more of the conditions set out in Section 211.447, and that the best interest of the child is served by terminating all parental rights of the parent. . . ." Section 211.447 provides that parental rights may be terminated by consent of the parent or "when it appears by

*clear, cogent and convincing evidence*" (emphasis ours)[2] that any one or more of eight enumerated grounds for termination exists, as set forth in § 211.447.2(2)(a)–(h)." Briefly summarized, they are abandonment, neglect, incest or sexual molestation, repeated or continuous abuse, a single incident of life-threatening abuse, nonsupport, serious mental deficiency or immoral conduct, or a continuing failure to rectify conditions which have previously been the basis for a change of custody.

We first consider the effect of the trial court's failure to recite the jurisdictional facts. This cause could be reversed and remanded solely on the grounds of the trial court's noncompliance with the statute. *In the Interest of R.S.P.,* 619 S.W.2d 863, 864 (Mo.App.1981). However, failure to recite the jurisdictional facts is not fatal to jurisdiction itself; if the appellate court can determine from the record that jurisdiction was properly taken, it may reach the merits of an appeal. *Id.* While we emphasize that noncompliance with the statute is not to be condoned, concern for the welfare of the children involved leads us to conclude that this matter should be finally disposed of in this court. *Id.* We are required to enforce the statute in a manner consistent with "the best interest and welfare of the [children]" involved, § 211.492 RSMo (1980), and this interest clearly would not be served by further delay. This reasoning also applies to the trial court's failure to relate its other factual findings to the specific and exclusive grounds for termination set forth in § 211.447. *In the Interest of R.S.P., supra; In the Interest of M.K.P.,* 616 S.W.2d 72, 77 (Mo.App.1981). Reversal could be predicated upon this ground alone, *In the Interest of D.E.J.,* 609 S.W.2d 472 (Mo.App.1980), but would not be appropriate under the circumstances of this case. We therefore go on to consider appellant's claim that the termination order was not supported by "clear, cogent, and convincing evidence."

2. This evidentiary standard has recently taken on constitutional dimensions. In *Santosky v. Kramer,* —— U.S. ——, 102 S.Ct. 1388, 71 L.Ed.2d 599 (1982), the Supreme Court held that the operative facts in a parental termination proceeding must be shown by "clear and convincing" evidence in order to satisfy the due process requirement of the 14th amendment.

■ The termination petition alleged neglect, abuse, nonsupport, unfitness due to mental deficiency and failure to rectify the conditions which formed the basis for the original removal of the children from custody. A careful review of the voluminous record reveals no clear, cogent and convincing evidence to support termination on any of these grounds.

We cannot find that appellant neglected her children within the meaning of the statute. She made efforts to regain their custody, visited with them regularly and complied with the court-ordered plan set up for her. Compare § 211.447.2(2)(b); *In the Interest of L.A.H.*, 622 S.W.2d 319 (Mo.App. 1981). We are also unable to find that the plan was "unsuccessful" since it merely prescribed certain actions to be taken by appellant without making clear what criteria would be applied in determining whether compliance had produced "successful" results. *In re C.A.K.*, 628 P.2d 136, 140, 141 (Colo.App.1980).

There was evidence of only one occasion on which the mother may have physically abused the children. This was the cause of the original removal of the children from appellant's home in 1977. There was evidence that the mother became angry with her children on some later visits. However, the evidence does *not* show that appellant "repeatedly or continuously abused" her children, as the statute requires. § 211.-447.2(2)(d), RSMo (1980).

There was no evidence on which to base a claim of nonsupport. Witnesses for all parties agreed that appellant was not financially able to provide for her children; but her former husband contributed to support the children, therefore, § 211.447.2(2)(f) could not apply. The trial court properly rejected this theory.

Evidence of the appellant's mental and emotional problems also fell far short of the statutory grounds for termination. Section 211.447.2(2)(g) allows termination only when "[t]he parent is so mentally deficient that [she] is *unable to form an intent or act knowingly,* and has continuously or repeatedly neglected the child or failed to give the child necessary care and protection." (Emphasis ours).

■ The only remaining possible ground for termination is appellant's alleged continuing failure "to rectify the conditions which formed the basis of the petition filed under Section 211.031, and the order entered under Section 211.181." § 211.447.2(2)(h)b, RSMo (1980). We note that the original order removing the children from appellant's custody was based on appellant's "emotional instability," a condition which she may not be able to rectify by her own efforts. Other courts have pointed out that statutes allowing termination on account of mental illness are not intended to "punish" parents for conditions or behavior which they cannot avoid; rather, these statutes seek to protect the child from unavoidable adverse consequences resulting from the parent's condition. *Matter of Welfare of Kidd*, 261 N.W.2d 833, 835–836 (Minn.1978); *In re Bryant W.*, 7 Fam.L. Rep. (BNA) 2619, 2620 (D.C.Super.Ct.1981). Unlike neglect, abandonment, abuse, or nonsupport, the mental illness of a parent is not per se harmful to a child. Therefore, when applying the "failure to rectify" test in cases involving a mentally ill parent, the initial fact is not simply the persistence of the illness *in the parent,* but rather the fact of continuing actual or potential harm *to the child.* The focus of the juvenile court's inquiry in such cases should be on the parent's ability or inability to maintain the parental relationship in a manner which would not be detrimental to the child. *Id.* Subsection (h) of § 211.447.2(2) does not provide blanket authorization for termination of parental rights on account of mental illness which does not rise to the level required by subsection (g). Termination under subsection (h) on account of mental illness can only be ordered when it is shown by clear, cogent, and convincing evidence that the child is still being harmed or is likely to be harmed in the future, if the parental relationship is continued.

Reviewing the extensive record, we find no evidence that the children would be harmed by a continuing contact with their

natural mother on a limited basis. The transcript contains many pages of testimony about appellant's past conduct and mental condition, but does not reveal clearly how this has affected the children. There were assertions that the children were sometimes distressed by their mother's outbursts which were directed at the social workers who attended the visitation sessions. Such distress is not sufficient proof that the requisite harmful "conditions" existed at the time of the original custody petition and continued at the time of trial. *In the Interest of R.L.L.*, 633 S.W.2d 409, 410–411 (Mo.App.1982); *In re C.A.K.*, 628 P.2d 136, 141 (Colo.App.1980).

Similarly, the record does not show that termination would be in the best interests of these children.[3] It does establish that they should not be in the permanent *custody* of appellant, but it does not follow that the drastic action of final and absolute termination is warranted.

■ The evidence does, however, support the trial court's conclusion that the children should be at this time in the custody of the maternal grandparents. The juvenile court is empowered by § 211.251 to modify custody orders made under § 211.181. We therefore reverse the trial court's order terminating appellant's parental rights and remand this cause to the trial court with directions that custody be placed with the grandparents subject to such visitation rights as it deems appropriate for the best interests of the children.

SMITH, P.J., and SATZ, J., concur.

---

3. We do not agree with appellant's contention that the court must avoid termination if there is another available alternative which is less restrictive of parental rights. This is not the standard prescribed by the legislature. The proper alternative is the one which serves the best interest of the child. § 211.447 RSMo (1980).