Watson TRICE, Plaintiff/Appellant,

v.

Rayburn A. TRAUGHBER, Commissioner of the Tennessee Department of Employment Security, and Golden Circle Broadcasting, Inc., Defendants/Appellees.

Supreme Court of Tennessee,
Western Section, at Jackson.

Oct. 8, 1990.

Timothy E. Watson, West Tenn. Legal Services, Jackson, for plaintiff, appellant.

W.J. Michael Cody, Atty. Gen. and Reporter, Stuart F. Patton, Asst. Atty. Gen., Nashville, for defendants, appellees.

OPINION

O'BRIEN, Justice.

This is a direct appeal by the employee, Watson Trice, who was denied unemployment compensation benefits by the Tennessee Department of Employment Security. Appellant was employed by Golden Circle Broadcasting, Inc., licensee of Station WJWT (TV) Jackson, Tennessee. According to the record he was discharged by his employer for refusing to work at the TV Station's transmitter facility located some distance outside of the city limits of Jackson. Mr. Trice filed a claim for unemployment compensation which was referred to an agency representative by the Commissioner of Employment Security to examine the claim and determine its validity. The claim was denied by that agency on the finding that the claimant was discharged because he refused to work at the new transmitter site. The agency found that the employer was not at fault, there was no work for the claimant except at the trans-

mitter site and claimant's refusal to work where needed disqualified him for compensation. Petitioner appealed the claim to an appeals referee who conducted an evidentiary hearing after which the claim was further denied. The petitioner filed an appeal to the Board of Review which upheld the decision of the Appeals Tribunal disallowing the claim under T.C.A. § 50–7–303(a)(2)(B). Judicial review was then sought in the Chancery Court of Madison County where it was submitted on the record of the proceedings before the Board of Review. The Chancellor reviewed the entire record and concluded that the decision of the Board of Review was supported by the facts and the law. He affirmed the decision and dismissed the case. The Court of Appeals, in turn, found there was substantial and material evidence in the record to support the Board of Review's findings that claimant materially breached a duty which he owed to his employer when he refused to report to work. They affirmed the judgment of the chancery court.

■ It is not disputed that the sole issue involved here is whether the appellant's refusal to work under the conditions imposed upon him by his employer amounted to misconduct connected with his employment within the meaning of T.C.A. § 50–7–303(a)(2)(B), so as to disqualify him for unemployment compensation benefits.

There is no doubt that appellant's actions preceding his discharge from employment, and subsequent thereto, warranted his dismissal by his employer. This Court observed in *Cherry v. Suburban Manufacturing Co.*, 745 S.W.2d 273, 275 (Tenn. 1988) that it has long been settled in this State, however, that a justifiable discharge is not, in and of itself, "misconduct connected with his work" so as to disqualify an employee under the statute. The quoted phrase is a very general one, and each case must be determined in light of all the facts and circumstances attendant upon the employee's termination. At a minimum, however, the cases are clear that the burden of proving a disqualification is on the employer; and in order to establish a disqualification there must be shown a material breach of some duty which the employee owes to the employer.

■ The pertinent facts upon which the Appeals Tribunal based its decision indicate the employer was in the process of moving some of its work facilities from a downtown Jackson location to a transmitter site outside the city limits. That site was not originally built for employees to work in on a long-term basis so certain renovations had to be made, one of which included the addition of running water. A well was required to supply water to the facility. The contractor employed to dig the well assured the employer that the water would be available on the first weekend in November, so the physical move was initiated on 31 October 1986. Much of the claimant's work was performed on the main control board, which was part of the operation being moved, therefore this process had the effect of changing his work site. The contractor had equipment problems and was unable to turn on the running water as scheduled. When Mr. Trice heard the water had not been turned on by Monday, 3 November 1986, he refused to report to work and was discharged. The water was turned on the next day. It was further found that the lack of running water did cause an inconvenience. However, the employer had assurances from the contractor that the site would be ready, so it appears the inconvenience was not the fault of the employer. As the water was turned on within four days, the inconvenience was only temporary.

The additional facts in the record, which are not disputed, indicate that the affected TV Station personnel were notified approximately two weeks before the actual transition occurred that they would be relocated at the transmitter site. On 27 October 1986 these personnel were informed they would be moving on Friday, October 31st. It was on that date that it became apparent the water would not be turned on and permanent sanitary facilities were not oper-

able. The transmitter station was approximately two miles off the main road in an isolated area. On Friday evening appellant talked to David Gilreath, the general manager of the TV station, about providing temporary sanitary facilities to serve until the following Monday when the water was supposed to be turned on. He did not receive any satisfactory response but, on the assurance that the water would be turned on the following day, he elected to work his first shift which began at 04:30 p.m. on Sunday, November 2nd. On Monday, before beginning his next evening shift he inquired and found there was still no water at the job site and no arrangements made for any temporary sanitary facilities. When he told his employer that he would not work under such conditions he was terminated.

T.C.A. § 50–7–304 provides:

The chancellor may affirm the decision of the board of review, or he may reverse, remand, or modify the decision if the rights of the petitioner have been prejudiced because the administrative findings, inferences, conclusions or decisions are: ...

(E) Unsupported by evidence which is both substantial and material in the light of the entire record.

(3) In determining the substantiality of evidence, the chancellor shall take into account whatever in the record fairly detracts from its weight, but he shall not substitute his judgment for that of the board of review as to the weight of the evidence on questions of fact. No decision of the board of review shall be reversed, remanded, or modified by the chancellor unless for errors which affect the merits of the final decision of the board of review.... An appeal may be taken from the judgment and decree of the chancery court having jurisdiction of these controversies to the Court of Appeals of Tennessee, in the same manner, but not inconsistent with the provisions of this chapter, as provided in other civil cases.

In response to the issue raised, this Court is of the opinion that appellant's refusal to work at the transmitter site did not amount to "misconduct connected with his work" so as to disqualify him for unemployment compensation benefits. In a different context, in *Wallace v. Stewart*, 559 S.W.2d 647, 648 (Tenn.1977), the Court noted that no aspect of [a] contract of employment is more basic than the right of the employer to expect employees will appear for work on the day and at the hour agreed upon. Persistent failure to honor that obligation evinces a substantial disregard for the employer's interest and may justify a finding of misconduct connected with the employment. Those are not the facts in this case. Appellant discussed with his employer the lack of sanitary facilities in his work place prior to working his first eight-hour shift. He received no response whatsoever except that water would be available the next day. Prior to beginning work on the next day he discussed the matter again with the television station manager, advising him that a co-worker, who also handled the same controls, had an eye infection which involved frequent medication and use of his hands about the infected area and there was no place to wash one's hands after handling the controls.

In *Weaver v. Wallace*, 565 S.W.2d 867, 870 (Tenn.1978), the Court expressed the rule to be, [u]nless the employee's wrongdoing violates a duty owed to the employer, it cannot amount to that "misconduct *connected with his work*" which serves to disqualify him to receive unemployment insurance benefits, although it may fully justify the employer in discharging him. (Emphasis in original text.)

Applying the standards set out in *Weaver v. Wallace*, supra, we cannot agree that appellant's refusal to work amounted to a wrongdoing which violated a duty owed to his employer. His obligation and duty is to work at a time and a place where he is called upon to work by his employer however, there is a corollary duty on the part of the employer to provide working condi-

tions which are not dangerous or detrimental to health, as well as reasonable and proper sanitary facilities. It is true the water was turned on five days after the move, as found by the agency representative appointed by the commissioner, however, appellant would have been required to work two eight-hour shifts under those unsanitary conditions. It is not reasonable and proper to expect employees to work such an extended period of time where those unreasonable conditions prevail without any effort on the part of the employer to alleviate them.

The judgment of the Court of Appeals is reversed. The decision of the Chancery Court and the Board of Review denying unemployment benefits to the appellant is reversed. The cause is remanded to the Chancery Court for such other and further orders which may be required. The costs of this appeal are assessed against the defendant Golden Circle Broadcasting Company, Inc.

DROWOTA, C.J., and FONES, COOPER and HARBISON, JJ., concur.