In the Interest of A.A.R., Plaintiff,

Juvenile Officer, Respondent,

v.

B.R., Appellant.

No. WD 59986.

Missouri Court of Appeals,
Western District.

Feb. 15, 2002.

Motion for Rehearing and/or Transfer to
Supreme Court Denied April 2, 2002.

Christopher C. Fink, Cameron, Thomas J. Keedy, guardian ad litem, Unionville, for appellant.

Christopher P. Raynes, Trenton, for respondent.

Before ULRICH, P.J.,
BRECKENRIDGE and HARDWICK, JJ.

PATRICIA BRECKENRIDGE, Judge.

B.R. (Mother) appeals the termination of her parental rights to her daughter, A.A.R. On appeal, Mother claims that the Juvenile Division of the Circuit Court of Grundy County [1] lacked subject matter jurisdiction to terminate her parental rights because the juvenile court did not properly assume jurisdiction over this case since the juvenile officer's original neglect petition was insufficient to vest the juvenile court with jurisdiction. Mother further claims that the juvenile court lacked subject matter jurisdiction to terminate her parental rights because the juvenile court's judgment terminating her parental rights

failed to state specific findings of jurisdiction. This court finds that the pleading requirements of Rule 114.01 are not jurisdictional; the neglect petition stated facts sufficient to vest the juvenile court with subject matter jurisdiction over A.A.R.; and the record indicates that jurisdiction of the termination proceeding was properly taken. Therefore, the judgment terminating Mother's parental rights is affirmed.

A.A.R. was born on February 26, 1998. Four days later, on March 2, 1998, the juvenile officer filed a petition asserting that Mother and A.A.R.'s father, D.R.,[2] had neglected or refused to provide proper support, education, medical, surgical, or other care necessary for her well-being. The juvenile officer listed nine specific allegations to support this assertion. The relevant portion of the petition reads:

4. The juvenile, A.A.R., is in the custody of the Grundy Co. Juvenile Court (temporary custody of DFS) ... and is in need of care and treatment because:

In accordance with Section 211.031.1(1)(a) RSMo, the parents, or other persons legally responsible for the care and support of the child neglect or refuse to provide proper support, education which is required by law, medical, surgical, or other care necessary for her well-being, to-wit:

a) Child suffers from Intra-uterine growth retardation.

b) The natural mother inappropriately handled said child while breast feeding. She was heard to say to the child, "Shut up, why can't you do what you are supposed to do!"

---

1. The Juvenile Division of the Circuit Court of Grundy County will hereafter be referred to as "the juvenile court."

2. D.R.'s parental rights were terminated subsequent to the filing of the neglect petition and are not at issue in this proceeding.

c) The natural mother has no parenting skills or experience and nursing staff have been unseuccessful [sic] in instructing her in the care and feeding of said child.

d) The natural mother has attempted suicide on at least two occasions and has been institutionalized on several occasions for the treatment of mental illness.

e) The natural mother has refused to take medication prescribed for the treatment of her mental illness.

f) The child has extraordinary nutritional needs that require a high of care [sic].

g) Said child's natural father is a known sexual offender. An ex-parte order of protection was issued on behalf of the natural mother.

h) The natural mother was observed by the nursing staff of Wright Memorial Hospital to shake the child in such a manner as to place her in danger of "shaken baby syndrome."

i) By her own admission, the natural mother's home at Leisure Lake is inappropriate for said child and poses a health risk to said child.

On the same day the neglect petition was filed, the juvenile court issued an "Order of Temporary Detention" and took custody of A.A.R., placing her in foster care.

On April 17, 1998, the court held a hearing on the juvenile officer's neglect petition. Mother and her attorney attended the hearing. On the date of the hearing, the juvenile court, in its docket entry, found that Mother "admits the allegations of the petition with the exception of 4 b, c, d, e and h and consents to jurisdiction." On April 22, 1998, the juvenile court entered a written judgment in which it took jurisdiction over A.A.R. As its basis for taking jurisdiction over A.A.R., the juvenile court stated:

> The natural mother admits allegations of the petition 4(a), 4(f), 4(g) and 4(i). Allegations 4(b), 4(c), 4(d), 4(e), and 4(h) are abandoned by the State. The natural father denies allegations of the petition. Testimony is heard and the Court finds that allegation 4(g) of the petition is true and that the natural father is a known sexual offender, and for reasons thereof, and it appearing to be in the best interest of said child, the Petition is sustained as to the findings set forth above and jurisdiction exercised. Dispositional hearing is set for July 24, 1998, at 10:30 a.m. Said child's temporary custody remains with the Division of Family Services and the present placement continued.
>
> IT IS THEREFORE ORDERED that the Petition be and it is hereby sustained as enumerated in the findings, and jurisdiction exercised.

Thus, the juvenile court took jurisdiction over A.A.R. after finding to be true the juvenile officer's allegations that A.A.R. suffers from intra-uterine growth retardation; A.A.R. has extraordinary nutritional needs that require a high degree of care; A.A.R.'s father is a known sexual offender and an ex parte order of protection against him was issued on behalf of Mother; and, by Mother's admission, her home at Leisure Lake is inappropriate for A.A.R. and poses a health risk to A.A.R.

On August 16, 1999, sixteen months after the court took jurisdiction over A.A.R., the juvenile officer filed a petition to terminate Mother's parental rights to A.A.R. In the petition, the juvenile officer alleged that termination was appropriate under §§ 211.447.2(1) and 211.447.4(3)(b), (c), RSMo 2000.[3] Specifically, regarding

---

**3.** All statutory references are to the Revised Statutes of Missouri 2000, unless otherwise

§ 211.447.2(1), the juvenile officer alleged that A.A.R. had been in foster care for at least fifteen of the most recent twenty-two months. With regard to § 211.447.4(3)(b), (c), the juvenile officer alleged that A.A.R. had been under the jurisdiction of the juvenile court for a period of one year, and the conditions which led to the assumption of jurisdiction still persist, or conditions of a potentially harmful nature continue to exist, and there is little likelihood that those conditions will be remedied at an early date so that A.A.R. can be returned to Mother in the near future, or the continuation of the parent-child relationship greatly diminishes A.A.R.'s prospects for early integration into a stable and permanent home. The specific conditions cited by the juvenile officer were that Mother had been diagnosed with several psychological and personality disorders, including "Depression, Recurrent, Moderate, Sexual abuse of child, Victim, and Factitious Disorder, Predominantly physical signs and symptoms and personality disorders." The juvenile officer further alleged that there was no reasonable likelihood that Mother's condition could be reversed, and her condition rendered her unable to knowingly provide A.A.R. with the necessary care, custody and control.

A hearing was held on the petition to terminate Mother's parental rights in February 2000. Following the hearing, the juvenile court entered its judgment terminating Mother's parental rights to A.A.R. on both of the grounds asserted in the juvenile officer's petition. The juvenile court found that Mother "suffers from frequent seizures during which she blacks out, chronic depression and alcoholism, and significant emotional damage from sexual abuse from her natural father and ex-husband," and "has attempted suicide on more than one occasion in the past and

indicated.

has threatened suicide in recent months to her counselors and made numerous crisis calls reflecting her long history of emotional instability." The juvenile court further found, *inter alia*, that Mother refused to remove numerous cats from her house, refused to take prescribed medication, and "failed to comply with written service agreements and to adjust her circumstances or conduct to provide a proper home for the child." Mother subsequently appealed to this court.

On appeal, this court reversed the juvenile court's judgment on the basis that the juvenile court did not make sufficient findings with regard to subparagraph (a) of § 211.447.4(3), namely, "[t]he terms of a social service plan entered into by the parent and the division and the extent to which the parties have made progress in complying with those terms[.]" *In re A.A.R.*, 39 S.W.3d 847, 851–52 (Mo.App. 2001). This court also held that the juvenile court's finding under subparagraph (d) of § 211.447.4(3), which was that Mother abuses alcohol, was not supported by the record. *Id.* at 852. This court remanded the case to the juvenile court to make "appropriate findings supported by the record, and to enter judgment as it determines appropriate based on the record in accordance with section 211.447." *Id.* In a footnote, this court stated that "[t]he record and judgment are not clear on what the conditions were that originally lead to the assumption of jurisdiction. Because this case is being remanded for further findings, clarification of this issue is appropriate." *Id.* at 849 n. 2.

On remand, the juvenile court entered a new judgment detailing the terms of the social service plans DFS offered Mother, and Mother's failure to meet all of the terms in the plans. The court again con-

cluded that termination of Mother's parental rights was appropriate on the grounds listed in §§ 211.447.2(1) and 211.447.4(3)(b), (c), and was in A.A.R.'s best interest. The court included the same findings from its prior termination judgment and made additional findings. It specifically found that while Mother's alcoholism appeared to be under control, Mother had "made at least nine crisis calls in a four month period reporting seizures, depression, pain, and fear, reflecting her long history of emotional instability," and that Mother:

> [R]efused and failed to apply parenting techniques taught and demonstrated, refused to follow medication recommendations, refused to address her seizure condition as recommended and frequently changed mental health providers. [Mother] also failed to maintain sanitary standards by refusing to remove animals and garbage from the home and had brief periods during the winter when her utilities were turned off.

The juvenile court did not make any findings pertaining to the conditions that originally led the juvenile court to assume jurisdiction, as requested in this court's opinion. Mother filed this appeal.

### Standard of Review

■ This court will affirm the judgment terminating Mother's parental rights unless there is no substantial evidence to support it, it is against the weight of the evidence, or it erroneously declares or applies the law. *In re N.M.J.*, 24 S.W.3d 771, 777 (Mo.App.2000).

### Juvenile Court Had Subject Matter Jurisdiction

Mother's sole point on appeal is that the juvenile court lacked subject matter jurisdiction to terminate her parental rights to A.A.R. for two reasons. First, she claims that the juvenile court did not properly assume jurisdiction over A.A.R. because the juvenile officer's original neglect petition was insufficient to confer subject matter jurisdiction since it failed to sufficiently plead specific instances when Mother neglected A.A.R. Her second ground is that the juvenile court failed to include specific findings of jurisdiction in its termination judgment entered on remand. The juvenile officer argues that because Mother did not appeal the court's judgment assuming jurisdiction, Mother waived any defect in the neglect petition and the judgment assuming jurisdiction, and cannot use the alleged defects now to attack the court's jurisdiction to terminate her parental rights.

Contrary to the juvenile officer's argument, however, if the juvenile court did not have subject matter jurisdiction, then Mother can assert the "lack of jurisdiction as a defense to the court's later termination of her parental rights, for a court's lack of subject matter jurisdiction may be raised at any time." *In Interest of B.R.M.*, 912 S.W.2d 86, 90 (Mo.App.1995). Thus, this court must determine whether the juvenile officer's neglect petition was sufficient to vest the juvenile court with subject matter jurisdiction over A.A.R., and whether the jurisdictional findings in the termination judgment were deficient.

■ In the original petition, the juvenile officer sought the court's jurisdiction over A.A.R. on the basis of neglect under § 211.031.1(1)(a), RSMo 1994. The relevant portion of this statute reads:

> 1. Except as otherwise provided in this chapter, the juvenile court . . . shall have exclusive original jurisdiction in proceedings:
>
> (1) Involving any child . . . who may be a resident of or found within the county and who is alleged to be in need of care and treatment because:

(a) The parents ... neglect or refuse to provide proper support, education which is required by law, medical, surgical or other care necessary for his well-being[.]

Section 211.091.2 sets out what the petition in a juvenile court must contain. One of the requirements is that the petition "set forth plainly ... [t]he facts which bring the child or persons seventeen years of age within the jurisdiction of the court[.]" Section 211.091.2(1). Supreme Court Rule 114.01(b)(3) expands on this requirement, stating that the petition "shall set forth plainly and concisely, with reasonable particularity ... (3) the facts that bring the juvenile within the jurisdiction of the court, including the date, place and manner of the acts alleged and the law or standard of conduct, if any, allegedly violated by the acts[.]"

The Supreme Court addressed whether a neglect petition met the notice provisions of the Due Process Clause and whether it was sufficient under § 211.091.2, RSMo 1978,[4] to vest the court with jurisdiction in *Matter of Trapp*, 593 S.W.2d 193 (Mo. banc 1980). In *Trapp*, the juvenile officer's petition merely parroted the language of § 211.031.1(1), RSMo 1978, alleging:

(a) The parents or other persons legally responsible for the care and support of the children have neglected and refused to provide the children with the proper support, education which is required by law, medical, surgical or other care necessary for the well being of said child(ren).
(b) The child(ren) are otherwise without care, custody or support.
(c) The behavior, environment or associations of the child(ren) are injurious to

(their) welfare or to the welfare of others.

*Id.* at 195.

The Supreme Court first considered whether these allegations violated the Due Process Clause of the Fourteenth Amendment to the United States Constitution, requiring "adequate notice." *Id.* at 198. "The notice required is that 'notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.' " *Id.* at 198–99 (quoting *Armstrong v. Manzo*, 380 U.S. 545, 550, 85 S.Ct. 1187, 1190, 14 L.Ed.2d 62 (1965) and *Mullane v. Central Hanover Tr. Co.*, 339 U.S. 306, 314, 70 S.Ct. 652, 94 L.Ed. 865 (1950)). The Supreme Court found that the petition couched in the language of § 211.031.1(1) satisfied this notice requirement. *Id.* at 199. Particularly, the Court found that the allegations in the petition notified the parent of the pendency of the custody proceeding and "made clear that the charges against which the parents would need to defend were those of neglect to provide proper support, of neglect to provide medical or other care necessary for the children's well-being, or of maintaining an environment injurious to the welfare of the children or others." *Id.*

The Supreme Court then considered whether allegations "couched in the language of the statute defining the juvenile court's jurisdiction" were sufficient to vest the court with jurisdiction. *Id.* The Court found that " § 211.091, RSMo 1978 raises more stringent requirements for the contents of a neglect petition than are raised by the notice requirements of constitutional due process." *Id.* (footnote omitted).

---

4. The 1978 version of § 211.091.2 is substantively similar to the current version of the statute.

The Court then cited a number of cases from other jurisdictions finding that a neglect petition mirroring the statutory language was sufficient to vest the juvenile court with jurisdiction, including a case from Rhode Island, which had a statutory provision similar to § 211.091.2. *Id.* In *In re Three Minor Children,* 110 R.I. 11, 289 A.2d 434, 435 (1972), the Supreme Court of Rhode Island held that a petition that simply restated the statute defining the court's jurisdiction by stating that the children were "neglected due to lack of proper parental care and guardianship" was sufficient to vest the court with jurisdiction because the allegation that the children were without "proper parental care and guardianship" was an allegation of fact, and that factual allegation supported the conclusion that the children were neglected. *Id.* Thus, the Court in *Trapp* likewise held that a petition that was "couched in the language" of § 211.031.1(1), RSMo 1978, was sufficient to vest the juvenile court with jurisdiction, as the petition satisfied the requirement of § 211.091.2 that it set forth facts bringing the child within the court's jurisdiction. *Trapp,* 593 S.W.2d at 199. The Court in *Trapp* specifically declined to address "whether a neglect petition couched in the statutory language in violation of Rule 114.01 is so deficient that it would fail to vest the court with jurisdiction," however, because Rule 114.01 was not in effect at the time the neglect petition in *Trapp* was filed. *Id.* at n. 4.

In this case, Mother does not claim that the petition violated the notice requirements of due process. She, instead, raises only the second claim addressed in *Trapp,* that the allegations of the petition were insufficient to vest the juvenile court with jurisdiction under § 211.031, RSMo 1994. The petition asserting that A.A.R. was neglected complies with the requirements of *Trapp* in that the juvenile officer alleged

that the A.A.R. is in need of care and treatment because "the parents or other persons legally responsible for the care and support of the child neglect or refuse to provide proper support, education which is required by law, medical, surgical or other care necessary for her well-being." This language mirrors the statutory language of § 211.031.1(1), RSMo 1994, which the Supreme Court has found to be sufficient to vest the juvenile court with jurisdiction. *Trapp,* 593 S.W.2d at 199.

In addition to the statutory language, the petition in this case also included nine allegations of specific circumstances to support the contention that Mother and A.A.R.'s father, D.R., neglected A.A.R. The juvenile officer abandoned all but four of these allegations during the hearing on the adjudication petition. The four remaining allegations were:

a) Child suffers from Intra-uterine growth retardation.

. . .

f) The child has extraordinary nutritional needs that require a high [ ] of care.

g) Said child's natural father is a known sexual offender. An ex-parte order of protection was issued on behalf of the natural mother.

. . .

i) By her own admission, the natural mother's home at Leisure Lake is inappropriate for said child and poses a health risk to said child.

Thus, the allegations in the neglect petition in this case were more specific than those held sufficient to satisfy § 211.091.2's pleading requirements in *Trapp.*

■ Shortly after the Supreme Court's ruling in *Trapp,* the Eastern District decided *M.R.H. v. McElroth,* 622 S.W.2d 15,

16–17 (Mo.App.1981), a direct appeal challenging the sufficiency of the neglect judgment. The challenged neglect petition in *M.R.H.* alleged only that the child was "without proper care, custody or support," in that she "was diagnosed as suffering from developmental deviation[.]" *Id.* at 16. The Eastern District of this court noted the provisions of Rule 114.01, which were not considered in *Trapp*, and then followed *Trapp*'s analysis of whether the allegations of the petition were sufficient to satisfy the notice requirements of due process. The Eastern District found that, while such a petition was adequate to notify the natural mother that custody proceedings were pending, the petition was inadequate to "inform her of the charges against which she would need to defend." *Id.* at 17. Because there was "no allegation in the petition that this condition arose due to the mother's neglect or that it could have been corrected if the mother had taken appropriate measures," the court held that "the petition was insufficient to vest the juvenile court with jurisdiction." *Id.*

The next case to consider the sufficiency of a neglect petition was *In Interest of C.J.A.A.*, 674 S.W.2d 266, 268 (Mo.App. 1984). In *C.J.A.A.*, this court reviewed the sufficiency of a neglect petition that sought the court's jurisdiction over a twelve-year-old child on the basis that the parent "failed to provide a physically safe and emotionally sound environment for the child." *Id.* This court, citing *M.R.H.*, found that the petition's failure to mention any acts by the parent, "including the date, place, and manner of the acts" violated Rule 114.01(b)(3) and, consequently, "was insufficient to vest the juvenile court with jurisdiction." *Id.*

Thereafter, the Southern District of this court cited *M.R.H.* and *C.J.A.A* in its analysis of the sufficiency of neglect petitions.

In *In Interest of D.J.B.*, 718 S.W.2d 132, 133–34 (Mo.App.1986), the Southern District found insufficient a neglect petition seeking jurisdiction over a six-year-old child on the basis that the child's "behavior, environment or associations" were injurious to the child's welfare or to the welfare of others. Specifically, the court found that the petition was insufficient because it failed to allege that the parent had neglected the child, and failed to allege what specific acts the parent had committed that constituted neglect. *Id.* at 133. Likewise, in *In Interest of C.T.*, 942 S.W.2d 467, 468–69 (Mo.App.1997), the Southern District held that a petition that alleged that "it is believed that [child] is not receiving adequate medical, physical, and emotional care from his parent ... while residing in her home" was insufficient to vest the court with jurisdiction because it did not set forth any specific instance where the parent failed to provide the child with "adequate medical, physical or emotional care."

■ Because the only change since *Trapp* is the adoption by the Supreme Court of Rule 114.01, it would be easy to assume, as Mother does, that the four cases decided after *Trapp* hold that a failure to comply with the more stringent pleading requirements of Rule 114.01 deprives the juvenile court of jurisdiction. That principle is not specifically articulated in any of the four cases, however. *M.R.H.*, *D.J.B.*, and *C.T.* note the provisions of Rule 114.01, but do not include a discussion analyzing why Rule 114.01 is the basis for their rulings. In fact, in *M.R.H.*, the court expressly acknowledged that it was following the portion of *Trapp* applying the notice requirements of due process when the *M.R.H.* court found that the petition was insufficient to vest the juvenile court with jurisdiction because it did not inform the mother of the charges

against which she would need to defend. *M.R.H.*, 622 S.W.2d at 17. *D.J.B.* and *C.T.* cite *M.R.H.* and appear to apply the same analysis when finding that the petition did not allege any specific act of the parent that constituted neglect. Yet, none of these cases indicate that the parent asserted the constitutional claim that the petition violated the notice requirements of due process.[5] Generally, a constitutional claim that is not raised at the earliest opportunity is deemed waived. *T.S. v. P.S.*, 797 S.W.2d 837, 841 (Mo.App.1990).

Only the statements in *C.J.A.A.*, that the petition did not satisfy the requirements of Rule 114.01(b)(3) and "[c]onsequently, the petition was insufficient to vest the juvenile court with jurisdiction," could be read as holding that compliance with the pleading requirements of Rule 114.01 is essential to vest the juvenile court with jurisdiction. That interpretation of *C.J.A.A.*, however, would be contrary to this court's later ruling in *In the Interest of D.L.D.*, 701 S.W.2d 152, 156 (Mo.App.1985).

In *D.L.D.*, the juvenile court found that a neglect petition was insufficient to vest the court with jurisdiction because the petition failed to state the age and sex of the child in the caption, and it failed to state the child's residence, the parents' residence, and the name and address of the person or agency that had custody of the child. *Id.* In reversing, this court first noted that, although not stated in the caption, the child's age and sex were "readily apparent" from the face of the petition. *Id.* Because the Comment to Rule 114.01 "indicate[s] that the requirement that the age and sex of the child must appear in the caption is a minor modification introduced in the interest of clarity," this court ruled that the absence of this information "does not amount to a fatal defect." *Id.* As for the omission of the parents' and child's residences and the custody information, this court found that such information could be gleaned from the record. *Id.* at 157. Although noting that the deficiencies in the petition "could have been avoided," this court ruled that the deficiencies were "minor in nature" and did "not go to the substantive issue of whether jurisdiction attached." *Id.* Further, this court held that there was no provision "in the statutory scheme of the juvenile code that suggests that filing of a technically imperfect custody petition operates to negate the jurisdiction of the court in the custody proceedings." *Id.*

Regarding the sufficiency of the petition's jurisdictional facts under Rule 114.01(b)(3), the court in *D.L.D.* stated that "[t]he basic purpose of a petition filed in Juvenile Court is to state facts which bring the child within the jurisdiction of that court." *Id.* at 158. Because the neglect petition "emphasized that the child was neglected and in need of care and medical treatment, both of which the parents were not providing," this court ruled that the petition "stated facts sufficient to vest the juvenile court with jurisdiction to act." *Id.*

---

5. Likewise, in this case, Mother did not assert that the petition violated the notice requirements of due process. If she had, the allegations listed in subsections a), f), and g) likely would have been deemed insufficient under *Trapp*. As was the case in *M.R.H.*, there was no allegation in the petition that the conditions listed in subsections a), f), and g) arose due to Mother's neglect, or that they could have been corrected if Mother had taken appropriate measures. The allegation in subsection i), however, was sufficient under *Trapp* and *M.R.H.* because it alleged that, by Mother's own admission, her home was inappropriate and posed a health risk to A.A.R. The allegation clearly asserts that the condition arose due to Mother's neglect and, since Mother was aware of the condition, Mother could have corrected the condition had she taken appropriate measures.

According to *D.L.D.*, then, so long as the neglect petition indicated that the child was neglected and in need of care, and the parents were not providing that care, the petition was sufficient to vest the juvenile court with jurisdiction. The petition's failure to comply with the pleading requirements of Rule 114.01 did not negate this jurisdiction.

The basis of this court's ruling in *D.L.D.* may have been that the pleading requirements of Rule 114.01 are not jurisdictional. The opinion does not expressly so state, however. Because the holding of *D.L.D.* leaves open the issue of whether the pleading requirements of Rule 114.01 were intended to be jurisdictional, further inquiry into the purpose of the Supreme Court in adopting Rule 114.01 is necessary. If the Rule, in fact, imposes the minimum pleading requirements to vest jurisdiction, the consequence would be that any petition without this specificity does not plead sufficient facts to vest jurisdiction. If the Rule intends to establish pleading requirements that are not jurisdictional, the failure to comply would make the petition vulnerable to a motion to for definite pleading under Rule 55.27(d), or a motion to dismiss for failure to state a cause of action. Those deficiencies in the pleading are not jurisdictional, however, and are waived if not raised. *See Smith v. Smith*, 751 S.W.2d 125, 127 (Mo.App.1988).

Under the Missouri Constitution, the Supreme Court can adopt rules relating to practice, procedure and pleading, but cannot "change substantive rights." Mo. CONST. art. V, § 5 (1945). Therefore, the Supreme Court, in adopting Rule 114.01, could not change the substantive law and impose additional requirements to vest jurisdiction. Nevertheless, while the Supreme Court cannot "expand or shrink jurisdiction," the Court has the power to clarify the basis for jurisdiction. In *City of St. Louis v. Hughes*, 950 S.W.2d 850, 852–53 (Mo. banc 1997), the Supreme Court considered the effect of its amended Rule 74.01(a), which imposed conditions for what constitutes a judgment. While the Supreme Court recognized its limitations in establishing "rules relating to practice, procedure and pleading for all courts," the Court found that the rule does not "expand or shrink jurisdiction," but rather "merely clarifies what constitutes a judgment." *Id.* at 853 (quoting Mo. CONST. art. V, § 5 (1945)).

The issue here, then, is whether the purpose of the Supreme Court in adopting Rule 114.01 is to do as it did in *Hughes* and merely clarify the minimum pleading requirements essential to vest jurisdiction. Or whether the Supreme Court intended, instead, to clarify the facts necessary to state a cause of action for a juvenile case, without imposing a rule that a failure to plead those facts results in a *per se* lack of jurisdiction. The Supreme Court in *Hughes* went on to rule that "[t]he requirement that the trial must 'denominate' its final ruling as a 'judgment' is not a mere formality. It establishes a 'bright line' test as to when a writing is a judgment." 950 S.W.2d at 853. We do not have the guidance of a ruling of the Supreme Court to instruct us as to its intention in adopting Rule 114.01.[6] In understanding the intention of the Supreme Court, we must look to the language of the Rule and the Comment following the Rule.

---

**6.** In *In Interest of L.G.*, 764 S.W.2d 89, 93 (Mo. banc 1989), the Supreme Court discussed the requirements of Rule 114.01(b)(3) in a termination proceeding. The issue raised in that case was whether the termination petition violated Rule 114.01(b)(3)'s "fact pleading requirement." In addressing this issue, the Court did not refer to the Rule's requirements as being jurisdictional.

■ The language of Rule 114.01 requires that the petitioner "set forth with particularity the date, place and manner of the acts alleged." *In Interest of L.G.*, 764 S.W.2d 89, 93 (Mo. banc 1989). There is nothing in Rule 114.01 to suggest that the pleading requirements of that Rule were intended by the Supreme Court to impose a "condition precedent" to the court acquiring subject matter jurisdiction over a juvenile case. *See Burns v. Elk River Ambulance, Inc.*, 55 S.W.3d 466, 473 (Mo. App.2001). The Rule does not articulate any consequences for a petitioner's failure to comply. Nor does the Rule or its comment suggest that the court would lose jurisdiction over a juvenile petition in the absence of the facts specified in the Rule. *See id.* at 473–74. The Comment to the Rule indicates the Supreme Court's purpose in adopting Rule 114.01 was to introduce "several relatively minor modifications . . . in the interest of clarity," and to specify, more clearly than in § 211.091.3, "the facts that bring the juvenile within the jurisdiction of the court." These statements in the Comment do not convince this court that the Supreme Court intended that a pleading in the language of the statute, found "sufficient to vest the juvenile court with jurisdiction to act" in *Trapp*, 593 S.W.2d at 199, is now insufficient as a matter of law. "A court has subject matter jurisdiction if the petition states a claim belonging to the general class of cases over which the court's authority extends." *Burns*, 55 S.W.3d at 473. The Supreme Court in *Trapp* held that a petition couched in the language of § 211.031 states a claim belonging to the class of juvenile cases over which the juvenile court's jurisdiction extends. 593 S.W.2d at 199.

Because the pleading requirements of Rule 114.01 are more rigorous than the pleading requirements of § 211.091, a petition in compliance with the pleading requirements of Rule 114.01 would also meet the pleading requirements of § 211.091, and vest the juvenile court with jurisdiction. In contrast, a petition which complies with § 211.091, but does not comply with the pleading requirements of Rule 114.01, would be subject to challenge as erroneous on direct appeal, but not void for lack of jurisdiction and subject to collateral attack.

The finding by this court that the requirements of Rule 114.01 are not jurisdictional calls into question the rulings in *C.J.A.A.*, *D.J.B.*, and *C.T.*, because they appear contrary to the ruling of the Supreme Court in *Trapp*.[7] As previously stated, the rule of *Trapp* is that "a neglect pleading couched in the language of the statute defining the juvenile court's jurisdiction" met the notice requirements of due process, and met the more stringent pleading requirements of § 211.091 since it "stated facts sufficient to vest the juvenile court with jurisdiction to act." 593 S.W.2d at 199. In *C.J.A.A.*, the allegation was that the parent "failed to provide a physically safe and emotionally sound environment." That allegation is more specific than the allegation in *Trapp* that the parent "neglected and refused to provide proper support, education which is required by law, medical, surgical, or other care necessary for the well being of said child[ren]." In *D.J.B.*, the allegation of the petition that was found to be deficient was that "[t]he behavior, environment or associations of the child are injurious to his welfare or to the welfare of others." These allegations mirror the language of § 211.031.1(2)(d), which were found to be sufficient under *Trapp*. In *C.T.*, the challenged allegation of the petition was that

7. This opinion has been reviewed and approved by order of the court en banc.

the "[Child] is believed to be a neglected child within the meaning of 211.031 RSMo. in that it is believed that he he [sic] not receiving adequate medical, physical, and emotional care from his parent, ... while residing in her home." While this allegation is not in the exact language of § 211.031.1(a), it is sufficiently similar to be authorized by the ruling of *Trapp*. Only the pleading of *M.R.H.*, which alleged that the child was "without proper care, custody or support" because the child "was diagnosed as suffering from developmental deviation," was insufficient under the rule of *Trapp*.

Under the rule of *Trapp*, we have found that the juvenile officer's neglect petition in this case exceeded the pleading requirements of § 211.091, so the petition was sufficient to vest the juvenile court with jurisdiction. The alleged failure of the petition to comply with the pleading requirements of Rule 114.01 would have been error that could have been raised in the juvenile court or by filing a timely appeal. Any error in the sufficiency of the pleading was waived by Mother's failure to object at trial or file a timely appeal from the neglect judgment.

■ Mother's final claim that the juvenile court lacked jurisdiction is based on her assertion that the juvenile court's judgment terminating her parental rights to A.A.R. failed to state specific findings of jurisdiction. With regard to jurisdiction, the juvenile court stated in the termination judgment only that "the Court has jurisdiction of all parties." Mother argues that the court's failure to state more specific findings of jurisdiction, which she claims this court mandated in its prior opinion, requires reversal.

■ Section 211.477.5 provides that a termination judgment "shall recite the jurisdictional facts, factual findings on the existence of grounds for termination and

that the best interest of the child are served by the disposition stated in the order." It is true that the court's failure to comply with the requirement to recite jurisdictional facts could, by itself, warrant reversal and remand of the case to the juvenile court. *In Interest of C.P.B.*, 641 S.W.2d 456, 459 (Mo.App.1982). The juvenile court's "failure to recite the jurisdictional facts is not fatal to jurisdiction itself," however. *Id.* Rather, "if the appellate court can determine from the record that jurisdiction was properly taken, it may reach the merits of an appeal." *Id.* Here, this court finds that the juvenile court properly assumed jurisdiction over A.A.R. on the basis that Mother neglected A.A.R., because the record shows that Mother admitted that the home she provided A.A.R. was inappropriate and posed a health risk to A.A.R. A reversal and remand to restate this finding in the termination judgment would serve no purpose.

Contrary to Mother's assertion, the footnote in this court's opinion in Mother's first appeal, where this court noted that "[t]he record and judgment are not clear on what the conditions were that originally [led] to the assumption of jurisdiction," was not a finding of this court that the jurisdictional findings of the judgment were deficient and must be corrected. *A.A.R.*, 39 S.W.3d at 849 n. 2. One of Mother's points in the first appeal concerned the sufficiency of the evidence to support termination on the basis of her failure to rectify. *Id.* at 851. Thus, this court's concerns regarding clarification of the conditions that led to the assumption of jurisdiction pertained primarily to a review of the sufficiency of the evidence to support termination on the basis of failure to rectify. As Mother does not contest the sufficiency of the evidence to support termination on the basis of failure to rectify

in this appeal, the juvenile court's failure to make further findings concerning the conditions that led to the assumption of jurisdiction does not affect the decision in this appeal, nor deprive the court of jurisdiction.

The judgment of the juvenile court terminating Mother's parental rights to A.A.R. is affirmed.

All concur.